Scott, J.
The question in this case is, whether the jury were warranted in taking as true that part of the confession of the petitioner which tended to prove his guilt, and rejecting that which exculpated him.? A majority of the court are of opinion that they were.
When the confession of a party, either in a civil or criminal case (for the rule is the same in both) is given in evidence, the whole, as well that part which makes for him as that which is against him, must be taken together and go to the jury as evidence in the case. But, like other evidence, it must be weighed, and believed or disbelieved, in whole or in part, as reason may decide. The jury cannot, by a mere arbitrary exercise of the will, take a part to be true, and reject the residue. If, therefore, there be nothing in the case warranting such a discrimination, the whole must be taken to be true. But if, from opposing evidence, or the confession itself, facts appear which are sufficient to satisfy a rational mind that a part is not true, it ought to be rejected. 1 Phillips’s Evi. 3d american edi. p. 85. Rex v. Jones, 2 Carr. and Payne 629. Rex v. Higgins, 3 Id. 603. Rex v. Clewes, 4 Id. 221. When tried by this rule, we think the exculpatory statement of the petitioner *635 was properly disbelieved by the jury. It was highly * i * o improbable, contradictory, and its whole character tended rather to prove guilt than innocence. He was , . ° , . met by an acquaintance, about sunset in the evening preceding the night in which the horse in question was stolen, six or seven miles from the residence of the prosecutor, but passed on at the distance of fifteen or twenty yards without speaking, seemingly wishing to avoid being recognized. According to his own account, be purchased the horse in the early part of the night, after the usual preliminary chaffering, for one fourth of his value, in the lane of the prosecutor, and within sight of his house, from a man whom he did not know, and who, although his name is given, seems to be equally unknown to every body else, for we hear no more of him. It suddenly occurred to him, from the smallness of the price, that the horse was either unsound or had been stolen j and thereupon, instead of pursuing the supposed swindler or felon, he abandoned his previous intention of spending the night at a neighbouring house, resolved to turn a penny by a speedy sale, turned in an opposite direction, and by breakfast time next morning had ridden this probably unsound horse a distance of thirty-eight miles over a rugged country, to the house of a mr. Cass in Tennessee, with whom he exchanged him for a watch of about half his value. He then passed into North Carolina, the place of his birth. From the evidence of the prosecutor it appears that the horse was traced by his footprints from the field out of which he was taken, into a road leading to Tennessee, along which he rapidly passed in that direction, and was found in the possession of Cass; from whose description of the petitioner, the prosecutor was enabled to pursue and arrest him. When arrested, he protested his innocence, and declared his ability to prove an alibi. Upon second thought he abandoned that position, and gave the account above stated. He *636 was armed with a brace of pistols, a breast dirk, and a dirk knife. He drew both pistols upon the constable, and threatened to shoot him if he laid bands on him'. After being taken, he attempted to escape. The watch was found concealed in the shoe of his saddle bags; and the reason he gave for the concealment was, that he had heard that the prosecutor was in pursuit of a horsethief, and it occurred to him that he had bought and sold the horse that had been stolen. And this device, and resistance, and attempt to escape, were resorted to by a man who was arrested in the county in which he was born, and (with the exception of two years spent in the west) had passed his life, and within fifteen miles of the residence of his father.
Writ of error refused—Smith, Daniel, Clopton, Christian and Allen, judges, dissenting.