COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Retired Judge Benton*
Argued at Alexandria, Virginia


JAMES EDWARD JONES
                                                            OPINION BY
v.        Record No. 1801-06-4                    JUDGE RANDOLPH A. BEALES
                                                          OCTOBER 2, 2007
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                              H. Harrison Braxton, Jr., Judge

               Blair D. Howard (Howard, Morrison, Howard & Whelan, on briefs),
               for appellant.

               Rosemary V. Bourne, Assistant Attorney General (Robert F.
               McDonnell, Attorney General, on brief), for appellee.


        James Edward Jones (appellant) was charged with aggravated malicious wounding (Code

§ 18.2-51.2), use of a firearm in the commission of a felony (Code § 18.2-53.1), and carrying a

concealed weapon (Code § 18.2-308(A)).  The jury convicted appellant of unlawful wounding,

pursuant to Code § 18.2-51,[1] a lesser-included offense of aggravated malicious wounding, and of

carrying a concealed weapon.  The trial court imposed a sentence of four years of incarceration

for the unlawful wounding conviction and twelve months of incarceration plus a fine for the

carrying a concealed weapon conviction.  On appeal, appellant argues that the trial court

committed reversible error when it refused to play for the jury a videotape of his statement to the

---

        *Judge Benton participated in the hearing and decision of this case prior to the effective
date of his retirement on October 1, 2007.

        [1] The sentencing order contains a clerical error listing Code § 18.2-50 as the statute
criminalizing unlawful wounding.  The trial court is hereby granted leave to correct this error.
See Code § 8.01-428(B).

police. We hold the trial court erred, and we reverse the convictions and remand for a new trial if the Commonwealth is so inclined.

## I. Background

Appellant shot his neighbor, Mr. Finnegan, with whom he had been arguing. After the shooting, Detective Leonard interviewed appellant. The interview was videotaped.

The Commonwealth did not introduce the transcript or the videotape of appellant's statement at trial. Although Detective Leonard testified about his investigation of the shooting, he did not discuss the videotaped statement given by appellant. When testifying on his own behalf, appellant related the events that led to the shooting and mentioned that he voluntarily gave a statement to Detective Leonard.

On cross-examination, the prosecutor asked appellant about inconsistencies between his statement to Detective Leonard and his testimony at trial. Although appellant testified that he was concerned about Finnegan brandishing an axe just prior to the shooting, appellant admitted he said nothing about the axe in his statement to the police. He explained that he "didn't tell everything that happened" and that he "was under extreme duress in that interview." The Commonwealth asked if appellant mentioned the axe during his testimony to justify arming himself with a gun, to which appellant replied no.

Appellant also testified in cross-examination that he did not say anything in his statement to the police about his wife and stepdaughter seeing any of the events leading to the shooting. He explained:

> I couldn't tell everything in my mind that happened at the time. I couldn't say everything. I was just under duress. I even asked the detective I'm under duress and hold on a little bit; my mind was confused. I was devastated over this. I was near tears. I couldn't think correctly. There was a lot of things I didn't say.

Appellant also explained that he "didn't recall it at the time." The prosecutor then asked, "you were very keyed on, right after you shot Mr. Finnegan, of all the things that you needed to say and that you needed to do, right?" Later, the prosecutor went back to this inconsistency:

> Q. Right. And, yet, when you talked to Detective Leonard, you have two witnesses to this crime that you say was perpetrated upon you, and you didn't mention to Detective Leonard that your wife and your daughter witnessed the whole attack?
>
> A. No, sir. There's a lot of things that I didn't say.
>
> Q. And the reason is, sir, is because you knew that they witnessed it, but you knew that they witnessed you shooting an unarmed man without justification, that's why you didn't mention to Detective Leonard, isn't that true, sir?
>
> A. They testified to what they saw.
>
> Q. And, in fact, you were trying to protect them from having to give a statement about what they saw that you did, isn't that true, sir?
>
> A. That's not true, sir, at all.

In the cross-examination, the prosecutor also asked:

> Q. This idea about [Finnegan] having some hand in his pocket is one of the things that you felt you needed to say when you first talked to Detective Leonard, isn't that true, sir?
>
> A. Sir, I only stated under duress what I saw.
>
> Q. In fact, the story that you were trying to give Detective Leonard was he was coming at you, he had something in his pocket, I didn't know, it could have been a gun, and, so, that – I turned to fire.
>
> A. I never said that, sir. I never said it could have been a gun. I never said it could have been anything. I only stated he put his hand in his pocket.
>
> Q. Well, why were you suggesting that he put his hand in his pocket?
>
> A. That's because it's what he did. I only testified to what he did. I didn't say I seen a gun. I didn't say I seen a weapon. I didn't say

that he did anything except put his hand in his pocket. That's what happened.

On redirect, appellant's counsel asked appellant about the content of the statement given to the detective. Appellant explained:

> I only answered the questions that Detective Leonard asked me. I didn't volunteer information. He interviewed me and I answered the questions that he asked me. He did not ask me anything about an axe, nor did he ask me about my wife and daughter. So I didn't answer that question. I only answered precise questions that he asked me.

On re-cross-examination, the prosecutor asked, "You said he never asked you about an axe, but he did ask you why you went to your truck and got your gun, right?" Appellant answered that he "believe[d]" that he did. Then the prosecutor asked, "You never said one thing to Detective Leonard about putting your hand up and you backing up; you never said one thing during that interview, isn't that true, about that?" Appellant responded, "I don't recall, sir, whether I did or whether I didn't."

Neither the prosecutor nor appellant's counsel attempted to introduce the videotaped statement at the conclusion of appellant's testimony.[2] Instead, when his last witness finished testifying, appellant's counsel asked that the videotape be played for the jury, explaining:

> [The prosecutor] opened the door when he cross examined my client. And I think that the videotape should be shown to the jury. It shows the entire interview that he cross examined – he raised his voice and he said you didn't mention the axe, you didn't mention your daughter, you didn't mention this; and then I tried to get into things and I just think, since he opened all that up and cast all this -- impugned my client's credibility about the interview that I now should be --

---

[2] The prosecutor made no objection to the foundation for admission of the videotape nor is such an argument made on appeal. In the cross-examination of appellant, as well as the redirect questioning, both the prosecutor and appellant's attorney clearly proved appellant made a videotaped statement to the police. No one questioned whether the recording presented by appellant's attorney was that videotape.

The judge then interrupted and asked why the videotape was admissible when everyone agreed that the axe and appellant's wife and stepdaughter were not mentioned in the statement. Appellant's counsel explained:

> [Y]ou've got to look at this videotape, because it wasn't -- These sort of questions were never asked. He had him on the stand for an hour and a half. This detective asked questions, but primarily he was directing the attention with what happened down at the roadway. He didn't concentrate up on what happened in the driveway. He didn't even know that there was something going on at the driveway involving the mother and the daughter. The detective didn't even know that, so he didn't question him about that.

> \*     \*     \*     \*     \*     \*     \*

> It's totally unfair for him to say you didn't do this, you didn't mention that, and the jury not be able to see the context --

At this point the prosecutor interrupted to point out that appellant's counsel was "talking loud enough for the jurors to hear." When appellant's counsel tried to continue his argument, the trial court ruled that the tape was inadmissible hearsay.

After the jury was excused for the day, the parties argued again about the admissibility of the tape. Appellant's counsel explained:

> Well, all I'm asking is for the jury, who heard this vigorous cross examination about the videotape and what he said and what he didn't say, I'm just asking the jury to say take a look at it and put it in context and see what questions he was asked. That interview -- the questions -- many things were asked of him today that were not asked on that videotape.

He further argued that part of the statement was a prior consistent statement made prior to any motive to fabricate and, therefore, was admissible. Following the prosecutor's response, the judge said, "I think I've seen a copy of it. I think a copy of it's in the file . . . . And I think for – and – and I'll take another look at it. At this point I'm going to stand by my ruling."

The jury found appellant guilty of the lesser-included offense of unlawful wounding and of carrying a concealed weapon. After the trial, appellant's counsel asked the court to set aside the verdict, based on the court's refusal to show the videotape to the jury. The trial court said it did not believe appellant's testimony was impeached and denied the motion.

Appellant noted his appeal, asking this Court to overturn his convictions based on the trial court's refusal to play the videotape for the jury.

## II. Analysis

### A. Preservation of the Issue for Appeal

The Commonwealth argues that appellant did not preserve this issue for appeal because his arguments were not fully developed until his post-trial motion and, therefore, were not timely. The Commonwealth correctly explains that post-trial motions regarding admission of evidence generally are not timely, especially after the jury has reached a verdict and been excused. See, e.g. Poole v. Commonwealth, 211 Va. 258, 260, 176 S.E.2d 821, 823 (1970) ("An accused may not wait until the Commonwealth has rested its case before challenging the admissibility of identification evidence . . . because whether such evidence is admissible is a question involving inquiry by the trial court before the evidence is presented to the jury."). In this case, however, at two separate times prior to the beginning of jury deliberations, appellant asked the trial court to show the videotape to the jury – once at the conclusion of his case-in-chief and once after the jury was excused for the day. In both instances, he sufficiently raised the issue.

The post-trial motion was just the last, not the only, means by which appellant argued for admission of the videotape. Appellant placed sufficient information before the trial court about the nature of his request when he tried to show the videotape to the jury before he concluded his case. Appellant repeated this request before the jury began deliberations, when the trial court

- 6 -

still could have taken action to correct its error. Therefore, appellant clearly preserved his argument for appeal under Rule 5A:18.

## B. Admission of the Videotape

### 1. Standard of Review

We review decisions involving the admission of evidence for abuse of discretion by the trial court.

> The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Evidence is admissible if it tends to prove a matter that is properly at issue in the case and if its probative value outweighs policy considerations.

Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988). If we find an abuse of discretion, then we must also determine if that error was harmless. The Supreme Court has established the test for non-constitutional errors, such as the one alleged here:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand.
>
> [Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)] (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Atkins v. Commonwealth, 272 Va. 144, 154, 631 S.E.2d 93, 98 (2006); see Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . ."). The Commonwealth bears the burden to prove that the error was harmless. Beverly v. Commonwealth, 12 Va. App. 160, 163-64, 403 S.E.2d 175, 177 (1991).

## 2. Refusing to Admit the Videotape into Evidence

Appellant argues that the trial court erred when it found he was not impeached by the prosecutor's cross-examination. This finding by the trial court was plainly wrong. As the Supreme Court explained decades ago in Skipper v. Commonwealth, 195 Va. 870, 875, 80 S.E.2d 401, 404 (1954):

> A failure to assert a fact when it would have been natural to assert it amounts in effect to an assertion of the non-existence of the fact. Such conduct is *prima facie,* an inconsistency. Wigmore on Evidence (3d ed.) sec. 1042, p. 733. This inconsistency, unexplained, has a tendency to discredit the witness.

When discussing the right of a defendant to testify, and noting that a defendant will be open to cross-examination, the United States Supreme Court held that "witnesses [can] be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." Jenkins v. Anderson, 447 U.S. 231, 239 (1980). In this case, the prosecutor's examination of appellant was designed to impeach appellant with portions of his previous statement to the police.

When a witness is impeached with his failure to include particular facts in a previous statement, then the witness can explain why those facts were not included in the previous statement. See Skipper, 195 Va. at 876, 80 S.E.2d at 404 (finding it "'self-evident that witnesses so situated should be permitted to make such explanation as might be in their power'" (quoting State v. Reed, 62 Me. 129, 146 (1874))). Appellant did testify at trial that he left out facts in his initial statement to the police because he was "under duress" and was just answering the questions that were asked.

The issue then becomes whether appellant, who has explained the inconsistencies between his earlier statement and his testimony, is also permitted to introduce into evidence the taped statement. He offers two justifications for its admission: 1) the videotape is a prior

consistent statement and 2) the videotape also illustrates the circumstances surrounding the taking of the earlier statement. Because we hold the trial court should have allowed the jury to view the videotape as evidence of the circumstances surrounding the taking of the statement, we do not reach appellant's argument regarding a prior consistent statement.

The Commonwealth argues that the videotape could not be admitted to show the context of Detective Leonard's interview with appellant because appellant was simply trying to circumvent the hearsay rule, had the opportunity to explain the context with his own testimony, and merely wants to "bolster" his own testimony.

First, appellant did not ask that the videotape be introduced for the truth of the matter asserted, which is an essential element of hearsay.

> "The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the hearsay rule." VI Wigmore, Evidence § 1766. (Chadbourne rev. 1976).

Clodfelter v. Commonwealth, 218 Va. 98, 103-04, 235 S.E.2d 340, 343 (1977); see Tennessee v. Street, 471 U.S. 409, 414 (1985) (noting that confessions have a "nonhearsay aspect," such as when introduced "not to prove what happened at the murder scene but *to prove what happened when respondent confessed*" (emphasis added)). Appellant's statement to Detective Leonard was not hearsay in this context -- it was not presented to prove the truth of the facts asserted in it, but instead to rehabilitate appellant's credibility by explaining the inconsistencies between the statement and his testimony.

- 9 -

At trial, the prosecutor suggested in cross-examination that the inconsistencies were created because appellant was adding "a lot of things . . . in hopes that they can help [his] case . . . not because they're true, because they can help [his] case." For example, during cross-examination the prosecutor pointed out that, when appellant talked to the police, he did not mention the axe held by Mr. Finnegan, and he did not say that his wife and stepdaughter were near the scene during the shooting. Appellant claimed he did not give all of the information to Detective Leonard because he was "under duress" and because he "only answered the questions that Detective Leonard asked."

The prosecutor also characterized and paraphrased appellant's statement during cross-examination:

> Q. In fact, the story that you were trying to give Detective Leonard was he was coming at you, he had something in his pocket, I didn't know, it could have been a gun, and, so, that -- I turned to fire.
>
> A. I never said that, sir. I never said it could have been a gun. I never said it could have been anything. I only stated he put his hand in his pocket.
>
> Q. Well, why were you suggesting that he put his hand in his pocket?
>
> A. That's because it's what he did. I only testified to what he did. I didn't say I seen a gun. I didn't say I seen a weapon. I didn't say that he did anything except put his hand in his pocket. That's what happened.

Appellant wanted to show the videotape to the jury to support his explanations, so the jury would not consider the inconsistencies as relevant or material to his credibility. The videotape would also show the jury who was correct about the content of the statement -- the prosecutor or appellant. Appellant should have been permitted to show the jury the videotape so that the jury members could determine for themselves the extent of the inconsistencies between the testimony and the statement and could weigh the effect of those inconsistencies on

appellant's credibility.  Cf. Ford v. Commonwealth, 48 Va. App. 262, 268, 630 S.E.2d 332, 335 (2006) ("[I]t is the province of the jury . . . to weigh the facts and to judge the credibility of the various witnesses.").

The United States Supreme Court noted in Crane v. Kentucky, 476 U.S. 683 (1986), that the circumstances surrounding a statement can be relevant to credibility.  Appellant here argued to the trial court that the jury needed to see the context of the earlier statement to understand why the omissions occurred.  The videotape was relevant to the issues of impeachment and credibility; viewing it would have given the jury an opportunity to determine for themselves whether appellant's descriptions of the earlier statement as given "under duress" and "only answer[ing] the questions" were correct.  The Missouri Court of Appeals, facing a very similar situation, noted:

> At trial, Sam [a defense witness] testified he failed to tell the police about certain matters raised by the state because he was "under a lot of stress" when he made his statement.  His credibility was in issue.  The precise issue was whether his explanation for the omissions in his prior statement was credible.  Merely hearing him say he was under stress is significantly different from actually seeing his demeanor and the manner of his speech that could show the stress.  Indeed, a jury is specifically instructed that "in determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness'[s] manner while testifying; . . ."  MAI-CR3d 302.01.  And, on appeal, we consistently emphasize that the proper determination of a witness's credibility depends in large part upon his demeanor and manner of testifying.  See, e.g. State v. Skillman, 228 Mo. 434, 128 S.W. 729, 731 (Mo. 1910).  If these statements are to make sense in the present context, they must mean the jury should have been allowed to observe Sam's demeanor and manner at the time he made his statement to the police, in order to determine whether his explanation based on stress was credible.  But, the jury was denied this opportunity and was limited to his explanation at trial:  "I was under a lot of stress."

State v. Grant, 784 S.W.2d 831, 834 (Mo. Ct. App. 1990) (explaining why the error was not harmless).

- 11 -

In this case, the jury needed to weigh the prosecutor's implied reasons for the inconsistencies between appellant's statement to Detective Leonard and appellant's testimony. The trial court should have allowed the jurors to resolve this conflict over appellant's credibility by showing them what actually happened, rather than requiring that they rely on the paraphrasing and descriptions presented by the prosecutor and by appellant.

If evidence is relevant and admissible, then a defendant should be allowed to present that evidence. The Commonwealth concedes the evidence is relevant,[3] but argues the statement was inadmissible hearsay. However, the bare fact that a declaration was made out-of-court does not conclusively prove that the statement was hearsay and, therefore, inadmissible:

> Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.
>
> If, however, the statement is admitted to prove some other extraneous fact, such as that the statement was in fact made, the state of mind of the declarant, or notice or knowledge, then the statement is not hearsay and will be admissible if relevant and not otherwise violative of another rule of evidence. When evidence that might otherwise be hearsay is admitted for a limited, non-hearsay purpose, the trial court must instruct the jury that they are to consider the evidence for the specific limited purpose; where such a limiting instruction is given, we presume that the jury followed that instruction.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992) (citations omitted).

In this case, because the Commonwealth chose to use this statement to impeach appellant, it opened the door to allow appellant to use this statement, too. The Commonwealth

---

[3] The Commonwealth agrees the evidence is relevant, as it concedes that appellant had the right to explain the inconsistencies between his statement and his testimony. The Commonwealth, however, wants to limit the evidence on this issue to appellant's testimony.

cannot limit appellant's use of the statement by paraphrasing the major sections of the statement for the jury, and then expect to have the statement excluded.[4]  As the Supreme Court noted many years ago:

> In the case of <u>Parrish v. Commonwealth</u>, 81 Va. 1, 14 [(1884)], this court said:
>
>> "In the case at bar, the Commonwealth introduced the admissions or statements of Parrish to prove the killing; and, according to all the authorities, 'if a prosecutor uses the declaration of a prisoner, he must take the whole together, and cannot select one part and leave another; and if there be either no evidence in the case or no other evidence incompatible with it, the declaration so adduced in evidence must be taken to be true.'"  Roscoe's Crim. Evidence, 52, 53; 1 Phillips on Evidence, 537; <u>Brown's Case</u> (<u>Brown v. Commonwealth</u>), 9 Leigh (36 Va.) 633, 33 Am. Dec. 263 [(1838)].
>
> In the case of <u>Brown v. Commonwealth</u>, <u>supra</u>, it was said:  "When the confession of a party, either in a civil or criminal case (for the rule is the same in both) is given in evidence, the whole, as well as that part which makes for him as that which is against him, must be taken together and go to the jury as evidence in the case."

<u>Bowman v. Commonwealth</u>, 174 Va. 461, 463-64, 5 S.E.2d 497, 498 (1939).

Appellant did not ask for admission of the videotape for the truth of the statements made during the interrogation.  Rather, he wanted the jury to see the context in which these statements and omissions were made and determine for themselves which characterization of the inconsistencies was accurate.  The trial court erred in refusing to show the videotape to the jury.

---

[4] The Commonwealth argues that appellant should have asked to have a portion of the statement introduced rather than the entire statement.  As the trial court made clear that it did not think that any of appellant's statement to Detective Leonard could be introduced, and the cross-examination discussed various inconsistencies and appellant's manner and motivation throughout the entire interview, this argument by the Commonwealth is not persuasive.

### 3. Harmless Error

The error here involves exclusion of evidence that could have rehabilitated appellant's credibility. The record does not establish that the error "plainly" did not affect the verdict. In Crumpton v. Commonwealth, 9 Va. App. 131, 138, 384 S.E.2d 339, 343 (1989), we reached a similar conclusion:

> The Commonwealth attacked Crumpton's credibility with his prior inconsistent statements. We cannot determine that a full explanation under the limitations set out above rather than Crumpton's restricted explanation would not have affected the jury's determination of Crumpton's credibility and ultimately his guilt or innocence of the charge against him.

Appellant was convicted of a lesser-included offense. He may have been exonerated if the jury found his testimony was entirely credible. Therefore, we cannot find this error was harmless without second-guessing the jury's evaluation of appellant's credibility. Consequently, the Commonwealth has failed to prove the error was harmless.

### III. Conclusion

For the reasons noted above, we must hold that the trial court erred in refusing to show the videotape to the jury. We reverse the convictions and remand for a new trial, if the Commonwealth is so inclined.

Reversed and remanded.