COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia


TYVON LEE CONYERS, A/K/A
 T.Y.
                                                            MEMORANDUM OPINION[*] BY
v.       Record No. 1635-15-2                       JUDGE MARY BENNETT MALVEAUX
                                                              DECEMBER 20, 2016
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Margaret P. Spencer, Judge Designate

            Christopher M. Bradshaw (Bradshaw & O'Connor, P.C., on brief),
            for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        A jury convicted Tyvon Lee Conyers ("appellant") of six felonies, including:  abduction, in

violation of Code § 18.2-48(i); carjacking, in violation of Code § 18.2-58.1; robbery, in violation of

Code § 18.2-58; and three counts of using a firearm during the aforementioned felonies, in violation

of Code § 18.2-53.1.  On appeal, he argues that the trial court erroneously sustained the

Commonwealth's objection to certain questions asked during cross-examination that were both

relevant and admissible under the completeness doctrine.  He also argues that the court erred in

overruling his motion to strike the abduction charge and the related firearm charge because any

abduction was incidental to the robbery.  For the reasons that follow, we affirm.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

On the afternoon of September 23, 2014, Eric Alexander arrived at a Richmond apartment complex with plans to meet someone he knew as Tierra, a young woman with whom he had connected through a social networking website.  After Alexander parked outside, a man held open the door to the building.  When Alexander entered, he found himself in a stairwell with a second man, who pointed a gun at Alexander and dragged him away from the entrance and down a few steps to the bottom landing.

In a dimly lit alcove beneath the stairs, the second man ordered Alexander to sit on his hands while the first individual watched for bystanders.  When the men asked for Alexander's money, he pleaded with them not to steal his property.  In response, the first man removed Alexander's shoes and stripped off his pants so they could clean out his pockets.  The second man then went out the back exit while the other individual fled to the parking lot, where he used Alexander's keys to steal his minivan.

When police arrived at the complex, Alexander described the first man as a black male in his early thirties who stood about 5'6" and weighed about 200 pounds.  He described the second man as a black male in his early thirties who stood about 5'8" and weighed about 200 to 220 pounds.  He also described this second person as having a dark complexion and a small goatee.

At about 2:15 a.m. the following morning, someone used one of Alexander's credit cards at an area Walmart.  Police distributed a security camera photograph of two men who were present during the transaction to local news media for publication.  Based on the tips they received from the public, detectives eventually developed two suspects:  Eric Rajah and appellant.

Alexander identified appellant in a photo array as the second man from the robbery. Police then obtained a warrant for appellant's arrest.  Appellant arranged to meet with officers

who took him to the police station for an interview with Detective William Cutshaw. During that interview, he admitted that he knew Rajah and identified both himself and Rajah in the Walmart surveillance footage.

At trial, appellant built his defense on a theory of "guilt by association." Although the photographs excerpted from Walmart's security footage suggested that only Rajah and appellant were at the store, the full footage revealed that they entered with a third man, Amene Harris. Appellant pointed out that it was Rajah who used Alexander's credit card on the Walmart surveillance video and suggested that he was merely a bystander to the transaction.

Appellant also suggested that Alexander misidentified him as the second robber due to a tainted photo array. Alexander admitted during cross-examination that he had seen the security camera photograph on local news. Alexander also admitted that when he arrived for the photo array, officers told him that they thought they had found the men from the security camera photos. Appellant demonstrated that while Alexander initially described the second robber as 5'8" tall, appellant stands just under six feet. And while Alexander initially described the second suspect as having a small goatee, appellant can be seen in the Walmart security footage wearing a fuller beard less than twenty-four hours after the robbery. Appellant suggested that if police had fully investigated Amene Harris and included him in the photo array, they might have identified Harris as the second robber.

To bolster this theory, appellant attempted to elicit testimony showing that he cooperated with the police investigation. During cross-examination, Detective Cutshaw acknowledged that appellant made an appointment with another detective to turn himself in. He also acknowledged that appellant voluntarily waived his Miranda rights and answered questions during his police interview.

- 3 -

But when appellant's counsel tried asking Cutshaw about appellant's specific statements during that interview, the Commonwealth objected on hearsay grounds. Counsel for the appellant responded that he was simply asking Cutshaw about his prior testimony and argued that "[t]he Commonwealth already opened the door to this." The trial court sustained the Commonwealth's hearsay objection, but stated that appellant's counsel would be allowed to proffer the reasons for the admissibility of the statements during jury deliberations. After the jury retired to deliberate, the judge observed that the defense had neither explained why the statements were not hearsay nor identified an applicable hearsay exception. Appellant's counsel explained that he wanted to ask again about appellant's admissions to show that he had not been evasive.

The jury found appellant guilty of abduction, robbery, carjacking, and three counts of using a firearm during the commission of a felony. The court imposed a sentence of fifty-eight years.

## II. ANALYSIS

### A. Appellant's Proffer Supporting His Completeness Argument Was Inadequate

Appellant first contends that the trial court erred by sustaining the Commonwealth's hearsay objection during Detective Cutshaw's cross-examination. He argues that the answer to his questions about his own interview statements would have been relevant to his defense and admissible under the completeness doctrine of Virginia Rule of Evidence 2:106(a).[1] We cannot

---

[1] Rule 2:106(a) provides a mechanism by which an adverse party can require a proponent to introduce other parts of a writing or recorded statement along with the proposed portion:

> When part of a writing or recorded statement is introduced by a party, upon motion by another party, the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it, unless such additional portions are inadmissible under the Rules of Evidence.

reach the merits of this argument, however, because the proffer of Detective Cutshaw's earlier testimony was incomplete or inadequate.

The decision to admit or exclude evidence rests "within the broad discretion of the trial court." Abdo v. Commonwealth, 64 Va. App. 468, 473, 769 S.E.2d 677, 679 (2015) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). This Court "will not disturb a trial court's decision to [exclude] evidence absent a finding of abuse of that discretion." Egan v. Butler, 290 Va. 62, 69, 772 S.E.2d 765, 770 (2015) (alteration in original) (quoting Harman v. Honeywell Int'l, Inc., 288 Va. 84, 92, 758 S.E.2d 515, 520 (2014)). We cannot determine whether the trial court abused its discretion, however, "without 'a proper showing of what that [excluded] testimony would have been.'" Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999)). This proffer is necessary because it "allows us to examine both the 'admissibility of the proposed testimony'" as well as the prejudice its erroneous exclusion caused the proffering party. Ray v. Commonwealth, 55 Va. App. 647, 650, 688 S.E.2d 879, 881 (2010) (quoting Tynes, 49 Va. App. at 21, 635 S.E.2d at 689-90).

Both Rule 2:106(a) and the common-law doctrine of completeness exist to protect against "the danger of admitting only a portion of [a writing, oral statement, or conversation], wresting that part out of its context." 1 Kenneth S. Broun, McCormick on Evidence § 56, at 391 (7th ed. 2013). In Bowman v. Commonwealth, 174 Va. 461, 463, 5 S.E.2d 497, 498 (1939), the trial court admitted only the inculpatory part of the appellant's earlier admission that he shot his cousin in self-defense. Although the trial court found that the explanatory part was self-serving and inadmissible hearsay, our Supreme Court reversed, noting that "the whole" of an admission

---

Although Detective Cutshaw testified about appellant's interview at trial, appellant noted during oral argument that his interview was recorded. This Court does not address whether the rule applies to recited portions of a recorded statement.

"must be taken together . . . as evidence." Id. at 464, 5 S.E.2d at 498 (quoting Brown v. Commonwealth, 36 Va. (9 Leigh) 633, 634 (1838)).

In Jones v. Commonwealth, 50 Va. App. 437, 452, 650 S.E.2d 859, 866-67 (2007), this Court relied on Bowman to explain why a trial court erred by excluding the defendant's videotaped police interview. While cross-examining the defendant, the prosecution used isolated inconsistencies from the earlier police interview to impeach his credibility. See id. at 441-43, 650 S.E.2d at 861-62. Defendant then asked that the entire taped interview be shown to the jury, arguing that the prosecution's questions had "opened the door" to the admission of the tape so that jurors could see the interview's context. Id. at 443-44, 650 S.E.2d at 862-63.

Defendant's proffer at trial demonstrated both how the prosecutor had taken his statements out of context and why admitting the full statements would correct any misrepresentation. Although the prosecutor used isolated statements from the interview to impeach defendant's testimony about one incident, defendant proffered that the interview had focused on a different incident:

> These sort of questions [asked by the prosecutor] were never asked [during the police interview]. . . . This detective asked questions, but primarily he was directing the attention with what happened down at the roadway. He didn't concentrate up on what happened in the driveway. He didn't even know that there was something going on at the driveway . . . . The detective didn't even know that, so he didn't question him about that.

Id. at 443-44, 650 S.E.2d at 862. Defendant explained that he wanted the jurors to "take a look at it and put it in context and see what questions he was asked" during the interview. Id. at 444, 650 S.E.2d at 863.

In this case, nothing in appellant's proffer suggests how Detective Cutshaw's recitation of his earlier admissions was either incomplete or mischaracterized. The proffer instead refers only to portions of the statement that already were elicited:

> [T]he Commonwealth opened the door to that evidence and, in fact, elicited the same evidence I was trying to elicit, which was, one, that, when asked by Detective Cutshaw during his interview, Mr. Conyers admitted that he knew him. And, when asked if it was him in the picture from Walmart, he admitted that that was him. He wasn't evasive. That would have been the line of questioning I would have pursued had it not been for the objection.

On brief, appellant argues that "[t]he Commonwealth was allowed to present particular parts of that statement . . . and thus fairness required permitting defense counsel to discuss other aspects of that statement." But we cannot tell from the record what the other aspects of that statement were. And without that information, we can only speculate as to whether any error by the trial court was harmless.

Because appellant's proffer at trial was inadequate, we lack the information necessary to evaluate the merits of his argument. Thus, we cannot find any abuse of discretion on the part of the trial court.

### B. The Abduction Was Not Incidental to the Robbery

Appellant also contends that the trial court erred by denying his motion to strike the abduction charge because any abduction was incidental to the robbery. We disagree.

This Court previously has observed that "[w]hether an abduction is merely incidental to another crime is a question of law," which we review *de novo*. Epps v. Commonwealth, 66 Va. App. 393, 402, 785 S.E.2d 792, 796 (2016) (quoting Hoyt v. Commonwealth, 44 Va. App. 489, 496 n.4, 605 S.E.2d 755, 758 n.4 (2004)). But because the application of the law to the case at bar "necessarily requires consideration of the historical facts," Hoyt v. Commonwealth, 44 Va. App. 489, 496 n.4, 605 S.E.2d 755, 758 n.4 (2004), "the trial court's findings of historical fact are controlling," Epps, 66 Va. App. at 402, 785 S.E.2d at 796 (citing Smith v. Commonwealth, 56 Va. App. 711, 721, 697 S.E.2d 14, 19 (2010)).

"[A]n abduction generally inheres in a robbery because 'there is usually some detention, and often a seizure, of the victim'" to accomplish the taking. Wiggins v. Commonwealth, 47 Va. App. 173, 180, 622 S.E.2d 774, 777 (2005) (quoting Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984)). To avoid implicating the Double Jeopardy Clause of the Fifth Amendment, our Supreme Court has held that a convicted robber may not also be punished for any abduction that is "merely incidental" to the robbery. Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713-14 (1985). In determining whether a detention was merely incidental to another crime, this Court considers a number of factors, including the detention's duration, whether it occurred during the commission of a separate offense, and whether its purpose was to avoid detection. See generally Hoyt, 44 Va. App. at 494-95, 605 S.E.2d at 757-58 (discussing factors used in other jurisdictions and comparing them with factors employed in prior Virginia case law). We must remember, however, that "[t]he *only* issue . . . is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013) (emphasis added).[2]

Although appellant relies heavily on Hoyt, his reliance is misplaced. In Hoyt, the appellant forced a clerk to walk about ten feet to a cash register during the five-minute robbery of a store. See 44 Va. App. at 496, 605 S.E.2d at 758. This Court concluded that this abduction was merely incidental because any detention and asportation was slight in duration and inherent

---

[2] In Lawlor, our Supreme Court took note of the four factors we adopted in Hoyt but declined to apply that test. See 285 Va. at 225 and n.12, 738 S.E.2d at 868 and n.12. The Court "express[ed] no opinion on the Hoyt factors" as it resolved that case using other precedents. Id. at 227 n.14, 738 S.E.2d at 869 n.14.

We observed in Hoyt that its test is useful because it "states in summary fashion the factors Virginia courts have employed on a case-by-case basis in determining whether an abduction is incidental to another crime." 44 Va. App. at 495, 605 S.E.2d at 757-58. But we recognize that its factors are essentially guideposts in addressing the ultimate issue.

to the robbery. Id. We noted that the asportation occurred during the robbery's commission and that Hoyt ordered the clerk to move no further than was necessary to open the register. Id.

This case is easily distinguished from Hoyt. Although appellant may have dragged Alexander only a short distance during the commission of a robbery, he did not need to move Alexander underneath the stairwell to take his possessions. Whereas the clerk in Hoyt had to walk to the register to open it, Alexander already had all of his property in his pockets.

Moreover, the record supports a reasonable inference that appellant dragged Alexander beneath the stairwell to avoid detection. Cf. id. at 497, 605 S.E.2d at 758-59 ("Finally, the evidence does not support an inference that Hoyt detained and moved [the clerk] in order to avoid the detection of the robbery."). Although appellant suggests that a passerby might have been able to see Alexander from the building's back exit, we must "consider [the evidence] in the light most favorable to the Commonwealth." Epps, 66 Va. App. at 402, 785 S.E.2d at 796 (alteration in original) (quoting Boykins v. Commonwealth, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969)). Thus, we must note that the crime scene photographs show a narrow corridor several feet in length separating the back exit from the stairwell. The area "under the stairwell" is a dark, secluded space around a blind corner at the end of this corridor. And Alexander testified that after Rajah and appellant met him at the entrance, appellant dragged him to this secluded part of the building while Rajah checked both doors.

A fact-finder could have inferred from this evidence that Rajah and appellant dragged Alexander under the stairs to isolate their victim. And while isolating him might have been "useful to perpetrating" the robbery, we cannot say that this "was 'intrinsic' to or 'inherent' in, the detention-plus crime." Pryor v. Commonwealth, 48 Va. App. 1, 6, 628 S.E.2d 47, 49 (2006) (citations omitted) (quoting Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994), and Coram v. Commonwealth, 3 Va. App. 623, 625-26, 352 S.E.2d 532, 533 (1987)).

We conclude that dragging Alexander beneath the stairs to a darkened alcove "exceeded the minimum [restraint] necessary to complete" the robbery. Lawlor, 285 Va. at 225, 738 S.E.2d at 869. Thus, the trial court did not err in denying appellant's motion to strike the abduction charge.

## III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.