COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia


KEVIN ANTHONY BATTAGLIA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0719-15-4                JUDGE ROSSIE D. ALSTON, JR.
                                                          MARCH 7, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

Joan C. Robin (Law Office of Joni C. Robin, on briefs), for
appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Kevin Anthony Battaglia (appellant) appeals his convictions of:  two counts of assault on

a law enforcement officer in violation of Code § 18.2-57(C); pointing/brandishing a firearm in

violation Code § 18.2-282; carrying a concealed weapon while intoxicated in violation of Code

§ 18.2-308.012(A); and resisting arrest in violation of Code § 18.2-479.1.  Appellant argues that

the trial court erred when it permitted a witness to read his entire witness statement in open court,

in denying appellant's motion for a mistrial, and in finding that the evidence was sufficient to

establish beyond a reasonable doubt that appellant resisted arrest.  We affirm the decision of the

trial court.

BACKGROUND

On November 17, 2013, appellant was a patron at Brittany's Restaurant & Sports Bar in

Prince William County.  Throughout the night appellant had two encounters with the restaurant's

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

security guard, Craig Kirkland. Kirkland testified at appellant's jury trial on November 12, 2014, that the first incident occurred when appellant was trying to leave the bar with an alcoholic beverage. The second occurred when another patron at the restaurant complained about appellant's behavior, resulting in Kirkland escorting appellant out of the restaurant.

Kirkland stated that he had to step in front of appellant and take him outside the restaurant when appellant tried to confront a patron that complained about him. Kirkland said that appellant was agitated, did not appear to understand that Kirkland was trying to get him to leave, and seemed intoxicated. Once outside appellant became further agitated and drew a gun from his pocket. Kirkland stated that he told the people in the immediate area to go into the restaurant, and then Kirkland went inside and locked the door.

Kirkland testified at trial that appellant tried to get back inside the restaurant. However, Kirkland did not include this information in his witness statement or at the preliminary hearing. Previously, Kirkland stated that after he went inside appellant "placed the gun back in his front right pocket and ran towards Gold's Gym," which is in the same parking lot as Brittany's Restaurant. During re-direct examination, the Commonwealth attempted to get Kirkland to read his entire witness statement into evidence. Appellant's counsel objected later arguing that the information in the witness statement was not addressed on cross-examination and some of it was hearsay. The trial court admitted the statement into evidence stating that "it ha[d] to do with the statement [Kirkland] made at the time to the police officers as [the trial court] underst[ood] and [the Commonwealth was] offering the entire statement . . . which she [wa]s entitled to do."

Officer Bryan Gee testified at trial that he responded to the emergency call from Brittany's Restaurant. When he located appellant in front of Gold's Gym, Officer Gee, while still in his car, got on his public address (PA) system and stated: "Police, turn around with your hands out slowly." Appellant began running, and Officer Gee pursued him in his vehicle.

Officer Gee noticed that while appellant was running he seemed intoxicated, "swaying, staggering, tripping over himself, [and] over his feet." Appellant rounded a fence at the edge of the parking lot and disappeared behind some bushes. Officer Gee put a spotlight on the bushes and gave appellant commands over the PA system. Officer Gee testified that he could see appellant lying underneath the bushes. Still on his PA system, Officer Gee ordered appellant to stand up and show his hands, which appellant ultimately did. Once appellant stood up he said: "Fuck you, motherfucker. What are you going to do?" Officer Gee stated that, at that point, he noticed that appellant had slurred speech. During this time Officer Gee testified that he remained in his vehicle stating: "I was waiting for other responding officers before I approached and also being I didn't know where his hands were. I didn't know if he had a hand on the gun."

Officer Gee also testified that he told appellant to turn around with his hands behind his back, and also told appellant that he was being placed under arrest for public intoxication. Appellant kept his hands raised in the air with his middle fingers up at Officer Gee and began walking, then running, in the opposite direction. Appellant ran across the street and tripped, falling forward onto the ground. At that point, Officer Gee approached appellant and put him in handcuffs with the help of another officer who had just arrived on the scene.

Officer Gee further testified about appellant's behavior after he was in handcuffs stating: "He was flailing his body, extremely disorderly, yelling cursing and squirming. At that point in time another officer and I were holding him down to prevent him from injuring us." Officer Gee then attempted to find the firearm appellant discarded. When Officer Gee returned appellant refused to walk to the police cruiser, so the officers had to carry him and place him in the back seat. Officer Gee stated that a short time later appellant began kicking the rear driver's side door and window, and even after Officer Gee tried to speak to him, appellant would not calm down. Appellant continued to flail his body and kick while lying down in the back of the police cruiser.

Officer Gee stated that he and Officer Brandon Smock were attempting to adjust the ripp restraint on appellant because he was kicking in the back of the police cruiser, and while doing this appellant kicked Officer Smock in the upper body, near his chest. Officer Smock moved back, and appellant kicked Officer Gee in the upper left arm. Officer Gee testified that he only saw appellant kick Officer Smock one time. After finally securing the ripp restraint, appellant was transported to the local adult detention center.

Officer Smock testified at trial that when he arrived on the scene appellant was already in custody, but was acting unruly so Officer Smock assisted in keeping appellant under control. Officer Smock stated that when he and another officer tried to calm appellant down appellant looked at Officer Smock and said "Fuck you." Appellant then kicked out at Officer Smock, hitting him all over the right side of his body. Officer Smock stated that after a while appellant calmed down and was placed in the back of a police cruiser, but became unruly again, attempting to kick out the rear passenger window with his feet. This caused Officer Smock and Officer Gee to reapply the ripp restraint to appellant, but not before appellant kicked Officer Smock again.

After the Commonwealth's case-in-chief, appellant moved to strike the Commonwealth's evidence stating that the Commonwealth had not met its burden of proving the charges against him. The trial court granted the motion as to the charge of consuming alcohol in a restaurant or bar while having a concealed handgun, but denied it as to the other charges.

Jennifer Battaglia, appellant's ex-wife, testified during the Commonwealth's case-in-chief. On cross-examination she stated that appellant had to pick up their children at a police station, specifically stating:

> Q: How long was it that Kevin was at the house to pick up the kids?
>
> A: We had to meet at a police station because he caused so much . . .

Q: Okay. I'm not talking about –

A: Okay. Yeah, he picked them up from the police station.

Following that statement, appellant's counsel and the Commonwealth approached the bench and appellant's counsel moved for a mistrial. Appellant's counsel argued that Mrs. Battaglia's statement left the jury with the impression that some prior bad act by appellant was the reason that she and appellant had to meet at the police station. The trial court denied appellant's motion, but instructed the jury to disregard Mrs. Battaglia's testimony about meeting appellant at a police station.

At the end of the trial, appellant renewed his motion to strike, focusing on the charge of resisting arrest. He argued that Officer Gee did not have probable cause to think appellant was drunk in public when Officer Gee told appellant that he was under arrest. The Commonwealth objected to appellant untimely raising the issue of probable cause at the end of trial. The Commonwealth also argued that Officer Gee had probable cause to arrest appellant for being drunk in public because he observed appellant exhibiting multiple signs of intoxication, and Officer Gee clearly told appellant he was under arrest. The trial court denied appellant's motion to strike finding that Officer Gee observed enough of appellant's behavior to arrest him for being drunk in public.

The jury found appellant guilty of two counts of assault and battery on a law enforcement officer, pointing/brandishing a firearm, carrying a concealed weapon while intoxicated, and resisting arrest. On May 18, 2015, the trial court entered an order sentencing appellant to six months' imprisonment for each count of assault on a law enforcement officer, twelve months with six months suspended and a $2,500 fine for pointing/brandishing a firearm, twelve months with six months suspended and a $2,500 fine for carrying a concealed weapon while intoxicated, and a $500 fine for resisting arrest. This appeal followed.

ANALYSIS

I.  The trial court did not err in permitting Kirkland to read his witness statement
in open court.

Appellant argues that the trial court erred in construing Virginia Rule of Evidence 2:106 to allow Kirkland to read his witness statement into the record during his re-direct examination because it was outside the scope of cross-examination and contained inadmissible hearsay, specifically statements from a female patron at Brittany's Restaurant telling Kirkland that appellant inappropriately touched her.  Appellant states that fairness would dictate that the prejudicial statements should be excluded from the record.  We disagree.

"Generally, the admissibility of evidence is within the discretion of the trial court and [the appellate court] will not reject the decision of the trial court unless [the appellate court] find[s] an abuse of discretion."  Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).  Where a decision is reviewed for an abuse of discretion, the appellate court does not substitute its own judgment "for that of the trial court," but considers "only whether the record fairly supports the trial court's action."  Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (citation omitted).  A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."  Turner v. Commonwealth, 284 Va. 198, 206, 726 S.E.2d 325, 329 (2012) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

The trial court did not specifically state the basis for its ruling when it permitted Kirkland to read his witness statement into the record, but appellant argues that the trial court's basis was Virginia Rule of Evidence 2:106, which states in pertinent part:

- 6 -

(a) *Related Portions of a Writing in Civil and Criminal Cases*.
When part of a writing or recorded statement is introduced by a party, upon motion by another party the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it, unless such additional portions are inadmissible under the Rules of Evidence.

While there is little case law applying this rule, in consideration of its plain language, the rule makes clear that "the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it." Id.

In this case, the trial court heard appellant's objection to Kirkland reading his witness statement to the jury. However, when appellant's counsel tried to impeach Kirkland with his witness statement on cross-examination, she opened the door for the statement to be discussed on re-direct. This Court addressed a similar issue in Jones v. Commonwealth, 50 Va. App. 437, 448, 650 S.E.2d 859, 864 (2007), when determining whether or not the trial court erred by allowing an entire videotape to be played to the jury this Court held that "appellant did not ask that the videotape be introduced for the truth of the matter asserted, which is an essential element of hearsay." Instead, the Court found that it was offered "to rehabilitate appellant's credibility by explaining the inconsistencies between the statement and his testimony." Id. at 448, 650 S.E.2d at 865. The Court further found that appellant "should have been permitted to show the jury the videotape so that the jury members could determine for themselves the extent of the inconsistencies between the testimony and the statement and could weigh the effect of those inconsistencies on appellant's credibility." Id. at 449, 650 S.E.2d at 865. "Because the Commonwealth chose to use [the] statement to impeach appellant," this Court concluded, "it opened the door to allow [him] to use [the] statement, too." Id. at 452, 650 S.E.2d at 866. As a

result, this Court held that the trial court "erred in refusing to show the videotape to the jury." Id. at 453, 650 S.E.2d at 867.

This case is similar to Jones because the Commonwealth wanted Kirkland's statement to be read to the jury so that the jury could determine what parts to believe rather than hearing select pieces of it from appellant's counsel on cross-examination. The trial court allowed Kirkland to read the entire statement based on Kirkland's prior testimony, the questions he was asked on cross-examination about his witness statement, and the evidence regarding the complaining female patron. We conclude that the trial court had the discretion under Virginia Rule of Evidence 2:106(a) to allow Kirkland's witness statement to be read to the jury because appellant's counsel tried to impeach him with it on cross-examination. Thus, the trial court did not commit a clear error of judgment by permitting Kirkland to read his witness statement at trial.

Appellant also claims that the witness statement, read by Kirkland, includes hearsay statements from the complaining female patron. However, appellant's counsel did not make the objection on these grounds. Appellant objected to Kirkland reading his witness statement to the jury, but did not specifically state the objection until after Kirkland read the statement to the jury. To be timely, an objection must be made with specificity and "at the time the occasion arises, *i.e.*, at the time the evidence is offered." Ingram v. Commonwealth, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986) (citing Gaumont v. State Highway Comm'r, 205 Va. 223, 225, 135 S.E.2d 790, 791 (1964)). While appellant's counsel did object, she did not specifically state, at the time the evidence was presented, that her objection was based on hearsay grounds. As such, appellant's hearsay objection was made improperly.

Thus, the trial court did not abuse its discretion when it allowed Kirkland to read his witness statement.

II. The trial court did not err in denying appellant's motion for a mistrial.

In this case, appellant argues that his motion for a mistrial should have been granted because his ex-wife stated on cross-examination: "we had to meet at a police station because he caused so much . . . ," when asked about when she had observed appellant in the past. Appellant contends that this statement was "so impressive that it probably remained on the minds of the jury and influenced their verdict." We disagree.

"Whether improper evidence is so prejudicial as to require a mistrial is a question of fact." Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993) (citing Lewis v. Commonwealth, 211 Va. 80, 83, 175 S.E.2d 236, 238 (1970)). "When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial." Green v. Commonwealth, 266 Va. 81, 102, 580 S.E.2d 834, 846 (2003) (quoting Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990)). A trial court's denial of a motion for a mistrial will not be reversed on appeal unless, as a matter of law, a manifest probability exists that the improper evidence prejudiced the accused. Coffey v. Commonwealth, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949). However, the admission of incompetent evidence is "reversible error notwithstanding the fact that the trial court, after its admission, instructed the jury to disregard it, if such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict." Asbury v. Commonwealth, 211 Va. 101, 104, 175 S.E.2d 239, 241-42 (1970) (citing Washington v. O.D. Ry. v. Ward's, Adm'r., 119 Va. 334, 89 S.E. 140 (1916); Coffey v. Commonwealth, 188 Va. 629, 51 S.E.2d 215 (1949)).

Appellant relies on the case of Mills v. Commonwealth, 24 Va. App. 415, 419, 482 S.E.2d 860, 862 (1997), to support his argument. In that case, a state trooper testified that: "the

field sobriety test was made available to [appellant] and [appellant] was arrested. And it appeared from [appellant's] arms that he had needle marks." Id. Appellant maintained that this statement unduly influenced the jury's deliberation. Id. at 418, 482 S.E.2d at 861. This Court found that merely instructing the jury to disregard the trooper's statements could not erase the prejudicial effects that the remarks had on the jury because the trooper's testimony was totally unresponsive to the question asked of him, and was irrelevant and highly prejudicial. Id. at 420-21, 482 S.E.2d at 862-63. We also found that the prejudice was compounded by the trooper immediately interjecting, after an objection was made, that he had photographs of the needle marks. Id.

This case can be distinguished from Mills because appellant's ex-wife was responding to a question about when she had the opportunity to observe appellant. She stated that in 2013 she only saw him once, when they exchanged their children for visitation, and that they "had to meet at a police station because he caused so much . . . ." Mrs. Battaglia's response was relevant to the question asked by appellant's counsel, and she was never given the opportunity to explain specifically why they had to meet at the police station because as soon as appellant's counsel objected she stopped speaking.

The trial court also gave an instruction to the jury to disregard Mrs. Battaglia's statements about meeting appellant at a police station. It is well settled that following the improper admission of evidence, juries are presumed to follow a court's "prompt, explicit, and curative instructions" to disregard the evidence. Beavers, 245 Va. at 280, 427 S.E.2d at 420 (citation omitted). That is exactly what occurred in this case. A mistake was made, and the trial court promptly told the jury not to consider Mrs. Battaglia's statement when making their determinations. The jury is presumed to have followed the trial court's instructions.

Appellant argues that a statement that he had to meet Mrs. Battaglia at a police station to pick up their children implies to the jury that he committed a violent offense in the past, which according to appellant makes the jury more likely to convict him of a crime, such as assault and battery on a law enforcement officer. Coincidently, the jury verdicts actually suggest the contrary, as appellant was found not guilty on one of the assault and battery charges.

Based on the fact that Mrs. Battaglia was responding to a question when she gave her answer, she stopped talking as soon as appellant's counsel objected, and the trial court immediately gave the jury a curative instruction to disregard her statement about meeting appellant at a police station, the trial court did not err by denying appellant's motion for a mistrial.

III. The trial court did not err in finding that the evidence was sufficient to establish beyond a reasonable doubt that appellant resisted arrest as defined under Code § 18.2-479.1.

Appellant argues that the trial court erred in failing to strike the resisting arrest charge against him because the evidence was not sufficient to establish that Officer Gee had the immediate physical ability to place appellant under arrest during the few seconds that appellant ran away from the officer. Appellant contends that as soon as the officer had the immediate physical ability to place appellant under arrest, he did so, and after appellant was handcuffed and placed under arrest, he did not flee police. We disagree.

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence "in the light most favorable to the Commonwealth and give[s] it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its own judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). The trial court's judgment "will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin v.

Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680;

Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975); Sutphin v.

Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985)).  Issues of statutory

interpretation are reviewed *de novo* on appeal.  Joseph v. Commonwealth, 64 Va. App. 332, 337,

768 S.E.2d 256, 258 (2015) (citations omitted).  "The same *de novo* standard of review applies to

determining the proper definition of a particular word in a statute."  Id. (citations omitted).

To determine whether or not the evidence presented at trial was sufficient to establish

beyond a reasonable doubt that appellant resisted arrest, this Court looks to Code § 18.2-479.1

which provides:

> A.  Any person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor.
>
> B.  For purposes of this section, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.

Specifically at issue in this case is the language in Code § 18.2-479.1(B)(ii)(a) stating that an

officer needs to have "the immediate physical ability to place the person under arrest."

In Cavell v. Commonwealth, 28 Va. App. 484, 487, 506 S.E.2d 552, 553 (1998) (*en*

*banc*), appellant was charged with resisting arrest.  The facts established that each time the

officer spoke to appellant, appellant responded with profanity, and when the officer told

appellant not to run, appellant responded that he was going to run, and did.  Id.  In affirming

appellant's conviction, this Court held that the evidence established that when the police officer

attempted to effectuate the arrest, appellant did not submit to the officer's show of authority,

when appellant knew or should have known that he was not free to leave.  Id.

Like the appellant in Cavell, the appellant in this case cursed at the officer and moved away from him. Moreover, Officer Gee testified that he "drew his weapon and advised [appellant] that he was under arrest and to turn around and put his hands behind his back." Thus, the evidence proves that Officer Gee had the authority and the ability to place appellant under arrest. Further, appellant did not listen to Officer Gee and began running away from him, and Officer Gee followed him. Appellant continued to flee from Officer Gee and curse at him until he tripped and Officer Gee was able to handcuff him. Officer Gee also testified that he was worried that appellant had a gun and wanted to wait for other officers to arrive on the scene before actually approaching appellant.

In the instant case, considering the evidence in the light most favorable to the Commonwealth, it appears that the trial court's judgment was not plainly wrong or without evidence to support it. Thus, the trial court did not err in finding that the evidence was sufficient to establish beyond a reasonable doubt that appellant resisted arrest as defined by Code § 18.2-479.1, and the conviction for resisting arrest is affirmed.

CONCLUSION

We hold that the trial court did not err when it allowed Kirkland to read his witness statement to the jury, when it denied appellant's motion for a mistrial, or when it found that the evidence was sufficient to establish beyond a reasonable doubt that appellant resisted arrest. Thus, we affirm appellant's convictions.

Affirmed.