# Richmond

COSSIE BOWMAN V. COMMONWEALTH OF VIRGINIA.

November 20, 1939.

Record No. 2181.

Present, All the Justices.

*O. C. Brewer,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

Cossie Bowman, the plaintiff in error, who was the defendant in the trial court, was indicted and tried upon the charge of having killed and murdered William Bowman. He was found guilty, by the jury, of murder in the second degree, and his punishment was fixed at fifteen years in the penitentiary. The verdict was confirmed by the court.

On the 24th day of November, 1938, William Bowman was shot and killed at the home of his cousin, Cossie Bowman, who will hereafter be referred to as the accused. At his home that night six men had gathered, apparently for the purpose of a general carousal. They were drinking and there ensued two fights, or what was termed a "scuffle" and a fight. The accused was not involved in either except as a pacificator and defender of the quiet and peace of his home. When he arrived at his home a little before dark he found two of the men there, later two others came, one of them being the father of the deceased, and still later two others came. The father of the deceased told one of the men to get in wood as they were "going to stay up all night."

The deceased and Paul Smith became involved in a quarrel and fight and the accused ordered them to leave. Smith left finally but fighting and disorder continued, resulting in the lights being knocked out, dishes broken and a general

melee. A gun was in a rack on the wall of the house, and there is a conflict in the evidence as to who took the gun from its position. One witness for the Commonwealth testified that the accused reached for the gun and said that he was "going to scatter them." The preponderating evidence is that the deceased took the gun and had it in his fight with Smith and as they went out of the front door to the ground it fell from his hand and the accused picked it up. The deceased knocked the accused out of the house with a chair. The chair was broken. The deceased said that he was going to kill the accused. He had thrown a rock at him, and was raising his arm to throw another rock or a bottle when the accused shot and killed him.

The deputy sheriff arrived at the home of the accused about 9:30 P. M. In the officer's investigation of the matter the accused made an explanation of it in which he admitted firing the shot but stated the circumstances referred to, under which it was done, saying that he had to shoot the deceased in order to save himself. This officer was called to testify for the Commonwealth, but was only allowed by the court to state the accused's admission of the shooting. The explanation was not allowed to go to the jury. It was held by the court to be self-serving and, therefore, inadmissible. This ruling was over the objection of the accused and is the subject of the first assignment of error. Since its determination will dispose of the case, other alleged errors will not be considered except in a cursory way.

■ In the case of *Parrish* v. *Commonwealth*, 81 Va. 1, 14, this court said:

"In the case at bar, the Commonwealth introduced the admissions or statements of Parrish to prove the killing; and, according to all the authorities, 'if a prosecutor uses the declaration of a prisoner, he must take the whole together, and cannot select one part and leave another; and if there be either no evidence in the case or no other evidence incompatible with it, the declaration so adduced in evidence must be taken to be true.' " Roscoe's Crim. Evidence, 52, 53; 1 Phillips on Evidence, 537; *Brown's Case*

(*Brown* v. *Commonwealth*), 9 Leigh (36 Va.) 633, 33 Am. Dec. 263.

In the case of *Brown* v. *Commonwealth, supra,* it was said: "When the confession of a party, either in a civil or criminal case (for the rule is the same in both) is given in evidence, the whole, as well as that part which makes for him as that which is against him, must be taken together and go to the jury as evidence in the case."

■ The Commonwealth practically concedes error in the ruling of the trial court referred to, but it urges that it was not prejudicial to the accused because that portion of the statement of the accused which the deputy sheriff was not allowed to reveal to the jury appeared in the testimony of other witnesses during the trial, including that of the accused.

We are not in accord with the position of the Commonwealth for the reason that the statement of justification made by the accused to the deputy sheriff on the night of the homicide, when he admitted the shooting, presented a setting distinctly favorable to the accused. At that time he had had little opportunity to invent a fabrication. His statement to the officer and iterated to the jury, if he had been allowed to do so, would, naturally and normally, have been impressive. The testimony which went to the jury was given three months after the occurrence. The jury might well have reasoned that the defense had had ample time to build up a case.

This view of the probable effect of the words of justification forces itself upon us because the conduct of the accused at the time was in harmony with his words. It is uncontradicted, indeed, it comes from the testimony of the Commonwealth. Gifford Bowman, a first cousin of the deceased, testified that the accused, "told me to call the law." The accused testified, without being contradicted, that he went to his father's home to meet the officers of the law and to tell them that on account of the bad roads they could not drive their cars to his house. There was nothing in the conduct of the accused that suggested the conscious-

ness of his having committed the crime of murder. "The wicked flee when no man pursueth."

The accused sought the conservators of the peace and the law. They were guided to his house and he was with them in the very presence of death, which he told them he had been compelled to inflict.

In the statement of justification which the officer would have related, had he been permitted to do so, it will be noted that the language used by the accused was "and was raising his arm to throw another rock or bottle." This becomes important because the prosecution undertook to weaken the case of the defense by introducing testimony that the officers made a search for evidence of a rock, which was alleged to have been thrown, or the impression of a rock, or two rocks, where they had lain in the snow when they were secured by the deceased. They found none. If the second threatened missile was a bottle, the officers did not look for it, and thus the force of the statement of the accused to the officer would not be impaired.

 We have carefully examined the instructions of the court. We think that when they are all read together, and considered together, as they must be, it is apparent that the jury was correctly told of the law, under the varying circumstances narrated in the evidence.

We reverse the judgment of the trial court and remand the case for such action, as the court and the attorney for the Commonwealth may be advised, not inconsistent with this opinion.

*Reversed and remanded.*