COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Raphael and Callins
Argued by videoconference


JAMES THOMAS CURRY
                                                           OPINION BY
v.      Record No. 1947-23-2                CHIEF JUDGE MARLA GRAFF DECKER
                                                           APRIL 1, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Meghan S. Skelton (Jonathan P. Sheldon; Sheldon & Flood, PLC, on
briefs), for appellant.

Allison M. Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


James Thomas Curry appeals his conviction for using a communication system to solicit a

child under the age of fifteen to engage in sexual acts in violation of Code § 18.2-374.3(C).  At his

jury trial, the Commonwealth introduced testimony from a police detective about Curry's

inculpatory post-arrest statement in which he admitted committing acts proving some of the

elements of the crime.[1]  On appeal, Curry argues that the trial court erred by refusing to admit the

exculpatory portions of that same statement during cross-examination.  We agree that the trial

court erred by excluding the challenged evidence.  As a result, we reverse Curry's conviction and

remand for a new trial should the Commonwealth be so advised.

---

[1] Throughout this opinion, we use the word "statement" to refer to the whole of Curry's
oral report of the facts that he provided to the detective in a single encounter, which included
several assertions.

On November 2, 2022, Henrico County Police Detective Della Strickland engaged in an undercover operation targeting online solicitation. The operation involved setting up a fake online profile and waiting for individuals to contact her via the internet. Using a messaging application called Skout, Strickland created a profile under the name "Kate." She included a photograph of her own face that she altered to look younger using age-regression software. In accordance with her training, she listed her age as forty-two years, significantly older than her apparent age in the photograph.

That morning, using an application called MeetMe that could communicate with anyone using Skout, Curry sent a message to Strickland through her fake profile. Curry told Strickland that he was "here to possibly find a relationship and possibly a wife," and he asked if she wanted to meet in person sometime. When Strickland replied affirmatively, Curry said, "Yeah. I'll be honest. I think you are really pretty, so that's my motive. If you are ok with that, yeah let's meet up." When discussing their ages, Curry told her that he was thirty-two. At that point, Strickland said she was "almost" fifteen years old. In response, Curry messaged that she was "too young" and he would "get in trouble just being seen with [her]." Curry then advised Strickland to "make an account with [her] correct age" to avoid "creeps" on the platform. He also asked Strickland what she would want to do if they met, such as "cuddling," "kissing," or "having sex." Strickland told Curry that she had never had sex. Curry replied by stating that "[t]he first time does hurt for girls" but assured her that he would be "as gentle as possible."

After this exchange, Curry suggested that he pick up Strickland so they could "go somewhere." At Strickland's prompting, Curry gave her his cell phone number, and the two

---

[2] According to familiar principles of appellate review, the facts are stated "in the light most favorable to the Commonwealth, as the prevailing party below." *Jones v. Commonwealth*, 71 Va. App. 597, 601 n.1 (2020).

began texting. Later that day, Curry texted Strickland, "I was hoping to get your address so I could tell your parents what you were doing online. All that stuff I said was just playing a role." Curry told her to "be careful" and "[s]ave [he]rself for marriage to the right guy[, n]ot some random person online." Curry also said, "[I]t wouldn't be right for me to take your first time," and "[i]f I was closer to your age and we were going to do it, I would be gentle."

The next day, Curry contacted Strickland again and asked if she was in school. He texted that he could hang out with her "but nothing [was] going to happen." Afterward, Curry and Strickland agreed that he would drive the two hours from Chesapeake to meet her. When asked what he wanted to do, Curry suggested dinner and a movie. He messaged that he would "set an example of how any future boyfriends should treat" her.

They agreed to meet at a mall. When Curry arrived and parked his truck, police officers arrested him. He told Detective Strickland that he met a girl named Kate on MeetMe who was around fifteen years old. The Commonwealth charged Curry with using a communication system to solicit a child under the age of fifteen to engage in sexual acts.

At Curry's jury trial, Detective Strickland testified about her communications with Curry online and through text messages under the pseudonym Kate. She explained that people used Skout "to locate minors . . . to solicit them online for sex." Strickland also testified about her conversation with Curry after his arrest. According to Strickland, Curry admitted that "he met the girl on MeetMe," which was "essentially the same platform as Skout." Strickland also conveyed Curry's admission that he communicated with "Kate" on the platform and that she was around fifteen years old. Further, Strickland testified that he acknowledged that he was thirty-two years old.

During cross-examination of Detective Strickland, defense counsel sought to ask her about the remainder of Curry's statement, but the Commonwealth objected on hearsay grounds.

Curry argued that his entire statement should be admitted under the rule of completeness. The trial court, however, sustained the objection. Nonetheless, the court allowed defense counsel to ask Detective Strickland if Curry ever said that he was at the mall to have sex with Kate. In response, Detective Strickland testified that when she asked what he and Kate had discussed doing that day, Curry's "response was about having sex and things like that."

At the conclusion of Detective Strickland's cross-examination, Curry asked the trial court to reconsider its ruling excluding the exculpatory portions of his conversation with Strickland. He argued that the Commonwealth, by introducing the inculpatory portions, had "open[ed] the door" for admitting the exculpatory portions. The court denied the renewed motion.

Curry proffered for the record a written summary of his post-arrest conversation with Strickland that the Commonwealth had provided to defense counsel during discovery. This summary included his explanation that he went to meet "a girl that was confused on trying to date older men" in order to protect her. According to the summary, Curry told Strickland that he intended to tell Kate's parents about her online activity. He also stated he went to their meeting to warn Kate about the dangers of trying to date men she met on the internet. As part of this conversation, Curry advised Strickland that he had no intention of having sex with Kate. Further, he told the detective that he used other social media platforms such as Facebook, Bumble, and Tinder. This written summary was not admitted into evidence.

The jury found Curry guilty of using a communication system to solicit a child under the age of fifteen to engage in sexual acts in violation of Code § 18.2-374.3(C). He was sentenced to ten years in prison, with five years suspended.

Curry filed a motion to set aside the verdict. He again argued that the trial court erred by refusing to admit his post-arrest statement to Detective Strickland in its entirety. He contended that the exculpatory portions of his "statement gave context to the inculpatory portions."

Further, Curry specifically suggested that the ruling excluding the exculpatory portions was error due to case law that required the admission of "exculpatory statements . . . made in the same confession or conversation sought to be introduced." The trial court disagreed and denied the motion. In making this ruling, the court concluded that Curry sought to admit the excluded portions of his statement to prove the truth of the matter asserted—his intent—and, as such, they were inadmissible hearsay.

ANALYSIS

I. Rule of Completeness

Curry challenges the trial court's decision to limit his cross-examination of Detective Strickland and not allow him to question her about the portions of his oral statement to her that were exculpatory.

A trial court's decision to admit or exclude testimony is reviewed for an abuse of discretion. *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019). The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "A reviewing appellate court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Jones v. Commonwealth*, 71 Va. App. 597, 603 (2020) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

Curry argues that the trial court abused its discretion by refusing to admit all of his oral statement to Detective Strickland, including the exculpatory portions, under the rule of

completeness. This rule includes two legal routes—the rule as set out both in the Virginia Rules of Evidence and in the common law. Generally, both iterations of the rule relate to admission of the complete writing or statement rather than only part. But the two versions differ in scope and application. As a result, we examine the rule of completeness first as contained in the Virginia Rules of Evidence and, second, as set out in the common law and discuss how each applies in this case.

## A. Virginia Rule of Evidence 2:106

Under the Virginia Rules of Evidence, "[w]hen part of a writing or recorded statement is introduced by a party, . . . the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it." Va. R. Evid. 2:106(a). Under this somewhat limited rule, the additional portions are not admissible if they are otherwise "inadmissible under the Rules of Evidence." *Id.*

Rule 2:106(a) specifically addresses only writings and recorded statements and therefore does not apply to the oral statement Curry made to Detective Strickland, which includes inculpatory and exculpatory portions. "Where no rule is set out on a particular topic, adoption of the Rules has no effect on current law or practice on that topic." Va. R. Evid. 2:102. And the Rules of Evidence were "adopted to implement established principles under the common law and not to change any established case law rendered prior to the adoption of the Rules." *Id.* Therefore, our analysis also considers the rule of completeness as it is set forth in the common law.

## B. Common Law

Virginia recognizes the general principle that "[w]hen a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together." *Pierce v. Commonwealth*, 2 Va. App. 383, 389 (1986)

(quoting 29 Am. Jur. 2d *Evidence* § 535 (1967)); *see Jones v. Commonwealth*, 50 Va. App. 437, 452 (2007). Unlike Rule 2:106, the common law version of the rule of completeness applies to statements made by the defendant, whether oral, written, or recorded.

"The ancient rule in this Commonwealth is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those which tend to mitigate, justify, or excuse the offense charged." *See Boggs v. Commonwealth*, 229 Va. 501, 517 (1985). "[I]f the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy, including any exculpatory or self-serving declarations . . . ." *Pierce*, 2 Va. App. at 389 (quoting Am. Jur. 2d, *supra*).

Unlike Rule 2:106, the common-law version of the rule of completeness applies to oral statements as well as written and recorded statements. *See id.* (analyzing the principle in the context of an oral confession). It also applies to admissions as well as confessions. *Bowman v. Commonwealth*, 174 Va. 461, 463, 465 (1939). *See generally Caminade v. Commonwealth*, 230 Va. 505, 510 (1986) (explaining that statements that "furnish" some, but not "all[,] facts necessary for conviction" are "admissions, not confessions"). Even so, the doctrine has its limits. Any portion of a statement that is irrelevant and easily removable is not admissible. *See Murray v. Commonwealth*, 71 Va. App. 449, 460 (2020); *Pierce*, 2 Va. App. at 389-90.

The question here is whether this common-law doctrine renders evidence admissible that would otherwise be inadmissible hearsay. *See generally Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020) (recognizing that evidence is inadmissible if it is hearsay that falls outside a recognized exception to the rule against hearsay). In other words, does this evidence, in the form of the exculpatory portions of Curry's oral statement to the detective, represent an exception to the rule against hearsay even though the Rules of Evidence do not specifically

delineate it as an exception? The holding in *Bowman v. Commonwealth*, 174 Va. 461, 463-65 (1939), requires the Court to answer that question in the affirmative.

In *Bowman*, 174 Va. at 463, the defendant admitted to the investigating deputy sheriff that he shot the victim but stated he did so in self-defense. The trial court admitted testimony from the deputy that the defendant said he shot the victim, but the court did not admit into evidence the portion of his statement that he acted to "save himself." *Id.* On appeal, the Supreme Court of Virginia reversed, explaining that "if a prosecutor uses the declaration of a prisoner, he must take the whole together, and cannot select one part and leave another." *Id.* (quoting *Parrish v. Commonwealth*, 81 Va. 1, 14 (1884)). The Supreme Court reasoned that the excluded exculpatory portion of the defendant's statement should have been admitted. *Id.* at 465. It reached this conclusion even though the excluded portion was hearsay that the defendant sought to admit to prove the truth of the matter asserted. *See generally Strohecker v. Commonwealth*, 23 Va. App. 242, 253 (1996) (noting that the rule against hearsay has "been the law in Virginia since 1795"). Under a plain reading of *Bowman*, the common-law rule of completeness applies to statements that otherwise would be considered inadmissible hearsay.[3]

Consideration of whether the common-law rule of completeness applies to Curry's statement requires a two-part analysis. The first step is determining if the excluded portions of Curry's statement to Detective Strickland at the time of his arrest were in fact hearsay. *See Jones*, 50 Va. App. at 448-51. If so, the second step of the analysis requires considering whether they nonetheless should have been admitted under the common-law rule as an exception. *See Pierce*, 2 Va. App. at 390.

---

[3] The Commonwealth suggests that Rule 2:106 essentially overruled *Bowman*. It did not. The Rules of Evidence were intended to "implement established principles under the common law and not to change any established case law." Va. R. Evid. 2:102. Further, Rule 2:106 does not encompass oral statements, and "[w]here no rule is set out on a particular topic, adoption of the Rules has no effect on current law or practice on that topic." Va. R. Evid. 2:102.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "[I]f a statement is not offered for its truth, it is not excludable as testimonial hearsay because it is not hearsay at all." *Bennett v. Commonwealth*, 69 Va. App. 475, 489 (2018). For this reason, "words offered solely to give context to party admissions are not hearsay and are admissible." *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998). As such, "[d]etermining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence." *Id.* at 559; *see also Manetta v. Commonwealth*, 231 Va. 123, 127 (1986) (noting that "[t]rial courts are often required to analyze the real purpose for which evidence is offered").

In this case, the trial court found that the excluded portions of Curry's out-of-court statement were intended to prove "the truth of the matter about what he intended." At trial, Curry argued that the Commonwealth failed to prove that he acted with lascivious intent or sent the messages with the purpose of soliciting a sexual act. His theory of innocence was that he was role-playing to protect Kate. On cross-examination of Detective Strickland, Curry tried to elicit testimony from her concerning his explanation to her about why he was at the mall. According to the written summary of Curry's statement, Curry told Strickland that he and Kate had discussed "going to dinner and a movie," "he was not going to have sex with her," and he only talked about sex with her because "he was playing an act." He told Strickland that he was at the mall to "meet . . . a girl that was confused on trying to date older men" and he planned to warn her about the dangers of meeting strangers from the internet.

The trial court determined that the proffered exculpatory portions of Curry's statement were offered to prove that Curry did not have lascivious intent and not only to provide context for the portions of his statement that were admitted. We agree with the trial court. Under these

- 9 -

circumstances, the trial court reasonably concluded that the purpose for which Curry sought to admit the excluded portions of his statement was to prove the truth of the matter asserted and, consequently, they were hearsay.[4]

The next question is whether, despite being hearsay, the exculpatory parts of Curry's statement nonetheless should have been admitted under the common-law rule of completeness. "To be admissible, . . . it must clearly appear that the exculpatory statements were made in the same confession or conversation sought to be introduced in evidence, and not upon other or separate occasions." *Pierce*, 2 Va. App. at 389 (quoting Am. Jur. 2d, *supra*).

It is undisputed that the excluded portions of Curry's statement were made at the same time and to the same person as the admitted portions. For this reason, *King v. Commonwealth*, 18 Va. App. 57, 59 (1994), does not apply to this case. At trial, the Commonwealth cited *King*, 18 Va. App. at 59, in support of exclusion. Although we recognize the trial court was faced with a difficult question involving a rarely invoked common-law legal principle, we hold that its reliance on *King*, 18 Va. App. at 59, was an error of law. In *King*, this Court affirmed the exclusion of the defendant's recorded exculpatory statement. *Id.* at 58, 60. The trial court admitted King's statement that he had committed the killing in self-defense but excluded his statement explaining that the victim's family had threatened him and the victim appeared to be holding a gun at the time of the shooting. *Id.* at 58-59. The excluded statement, however, was made at a separate time and to a different police officer than the admitted statement. *Id.* at 58. Therefore, in *King*, unlike here, the common-law rule of completeness did not apply. *See Pierce*,

---

[4] The facts of this case differ significantly from those in *Jones*, 71 Va. App. at 604-05, *Bennett*, 69 Va. App. at 489-90, and *Swain*, 28 Va. App. at 560, in which this Court held that certain out-of-court statements were not hearsay because their purpose merely was to prove context. In those cases, the challenged statements were made by someone else and prompted a response from the defendants. *Jones*, 71 Va. App. at 604; *Bennett*, 69 Va. App. at 490; *Swain*, 28 Va. App. at 559-60.

2 Va. App. at 389 (explaining that this doctrine applies only to separate portions of a single statement made on a single occasion).

Curry argues his statement to Strickland that he used other social networking applications, such as Facebook, Bumble, and Tinder, was relevant and exculpatory.[5] Detective Strickland testified that Curry admitted that "he met the girl on MeetMe" and described it as a social media platform which was "essentially the same platform as Skout." In light of the detective's testimony that people use Skout specifically to find minors and "solicit them online for sex," Curry's statement that he also used other dating and social networking platforms was relevant to the fact-finder's determination of his intent in using MeetMe.

In addition, Curry suggests that the portions of his statement relating to his intent were particularly relevant because Strickland testified that Curry implied that he planned to have sex with Kate. The unobjected-to *written* summary, proffered only to the court, in contrast to Strickland's testimony, reflects that Curry said to her that he "did not have any intentions on being with her in a sexual manner," he was "trying to [be a] white knight," and he intended "to let her know . . . there were bad people." This evidence was exculpatory and supported Curry's theory of the case that he did not send the electronic communications with the lascivious intent

---

[5] We recognize that any portion of a statement that contains an admission that is irrelevant and immaterial is not admissible. *See Pierce*, 2 Va. App. at 389-90. The Commonwealth correctly does not argue that the excluded parts of Curry's statement that he sought to have admitted were irrelevant.

required by Code § 18.2-374.3(C).[6] Yet, this evidence was not permitted to go before the jury during cross-examination.

For these reasons, the trial court abused its discretion by excluding the exculpatory portions of Curry's statement to Detective Strickland.[7]

## II. Harmless Error Analysis

The conclusion that the trial court erred by excluding the challenged cross-examination testimony does not end the inquiry when an appellate court considers reversal. "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be . . . reversed . . . for any error committed [at] the trial." Code § 8.01-678. "[I]t is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless . . . .'" *Commonwealth v. White*, 293 Va. 411, 420 (2017) (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983)).

---

[6] Code § 18.2-374.3(C) provides, in pertinent part:

> It is unlawful for any person 18 years of age or older to use a communications system, . . . for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age to knowingly and intentionally . . .

> [p]ropose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under [Code] § 18.2-361 . . . .

[7] We note that Curry also contends that Strickland's testimony that he planned to "pick up" Kate was misleading because his "actual statement reflects that the police asked him who he planned to 'meet.'" In other words, Curry emphasizes the difference between the exact wording of "pick up" and "meet." On this point, we are unconvinced. "Verbal precision" is not at issue here, where both accounts were Detective Strickland's recollection of what Curry said to her. *See Williams v. Commonwealth*, 11 Va. App. 149, 151-52 (1990) (explaining that an oral re-telling of what the defendant said plainly involves less precision than is the case with a verbatim recording).

"There are two distinct tests for determining harmless error. One applies when the claim involves constitutional error and the other when it involves non-constitutional error." *Castillo v. Commonwealth*, 70 Va. App. 394, 429-30 (2019) (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 711 (2016)). In this case, the Court applies the non-constitutional standard to review the effect of the evidentiary error. *See Adams v. Commonwealth*, 275 Va. 260, 277 (2008) (applying the non-constitutional test to evaluate the harmlessness of the admission of hearsay evidence).

Determining whether an error is harmless differs from reviewing whether the evidence was sufficient to support a conviction. *See, e.g.*, *Williams v. Commonwealth*, 32 Va. App. 395, 400 (2000) (en banc). A non-constitutional error is harmless when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *Graves*, 65 Va. App. at 712 (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946). In other words, "[a]n error is harmless 'if "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict,'" or "even if the evidence of the defendant's guilt is not overwhelming, . . . if the evidence admitted in error was merely cumulative of other, undisputed evidence."'" *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017) (second alteration in original) (quoting *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000)). "[T]he question is not whether the members of the appellate court would have convicted absent the error[] but rather, whether the jurors involved in the decision would have done so." *Welsh v. Commonwealth*, ___ Va. ___, ___ (Mar. 20, 2025) (explaining that error is

- 13 -

not harmless if the appellate court has a "'grave doubt'" that it "did not affect the outcome" (quoting *Clay*, 262 Va. at 260)).

In this case, the only contested elements of the charged crime were intent and purpose. Under the indictment, the Commonwealth was required to prove that Curry sent the electronic communications with lascivious intent and with the purpose of soliciting "sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under [Code] § 18.2-361." *See* Code § 18.2-374.3(C). The primary evidence supporting a finding that Curry sent the electronic messages with the requisite intent and purpose were the messages themselves.

After Strickland informed Curry that she was younger than fifteen years old, Curry asked what she would be "ok with" if they met, such as "cuddling," "kissing," and "having sex." Strickland, as Kate, responded that she had not had sex. Advising that "[t]he first time does hurt for girls," Curry asked Strickland if she would "want to" with him and promised that he would be "as gentle as possible." He also said that if she were not "so young," he would "put a ring on [her] finger." Curry drove approximately two hours in order to meet Strickland at a mall.

Despite this evidence, Curry also sent exculpatory electronic messages. He told Strickland that she was "too young" to have a relationship with him. Curry advised her to alter her online account to reflect her correct age so as to avoid contact with "creeps and scammers" on the platform. He encouraged Strickland, as Kate, to let him meet her parents. Curry asked for her address and messaged that he "was hoping to get" it so that he could "tell [her] parents what [she] was doing online." He advised her to "[s]ave [he]rself for marriage to the right guy. Not some random person online." He clarified that she did not know him and commented that "it wouldn't be right for [him] to take [her] first time like that." At first, Curry said he could not "hang out" with Strickland but then agreed that he could do so even though "nothing" would

- 14 -

"happen." The two arranged to meet at a mall, and Curry promised to take Strickland to a movie and dinner in order to "set an example of how any future boyfriends should treat [her]."

The exculpatory portions of Curry's oral statement to Detective Strickland at the time of his arrest supported his hypothesis of innocence at trial—that he "did not have any intentions on being with [Kate] in a sexual manner." After reviewing this record, we cannot "conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *See Graves*, 65 Va. App. at 712 (alteration in original) (quoting *Clay*, 262 Va. at 260). The evidence that Curry acted with lascivious intent and with the purpose of soliciting a sexual act was not "overwhelming," nor was "the error so insignificant by comparison that the error could not have affected the verdict." *See Salahuddin*, 67 Va. App. at 212 (quoting *McLean*, 32 Va. App. at 211).

The Commonwealth suggests that any error in excluding the exculpatory portions of Curry's statement to Detective Strickland was harmless because they were cumulative of the exculpatory electronic messages, which were before the jury. In determining whether evidence is cumulative, the Court examines the "*kind and character of the facts*" and not the "effect to be produced." *Commonwealth v. Proffitt*, 292 Va. 626, 640 (2016) (quoting *St. John v. Alderson*, 73 Va. (32 Gratt.) 140, 143 (1879)). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it." *Id.* at 640-41 (quoting *Massey v. Commonwealth*, 230 Va. 436, 442 (1985)).

Here, the excluded testimony did not simply restate what was already in evidence. It pertained to what Curry told Detective Strickland just after his arrest, not what he included in his earlier messages to Strickland when he thought she was Kate. Although the excluded evidence and exculpatory messages were similar in "effect to be produced," they were not cumulative. *See id.* (quoting *St. John*, 73 Va. (32 Gratt.) at 143). This is especially true because Detective

- 15 -

Strickland testified that when she asked what Curry and Kate had discussed doing when they met that day, Curry's "response was about having sex and things like that." With this testimony in evidence, it was particularly important to Curry's defense to have before the jury the portions of his statement to Strickland denying that he had any sexual intent in meeting Kate.

For these reasons, the trial court's error in excluding the exculpatory portions of Curry's statement to Detective Strickland was not harmless.[8] *See Welsh*, ___ Va. at ___ (holding that the erroneous exclusion of testimony was not harmless because the Court had "a 'grave doubt' that absent the trial court's error, the jury would have reached the same judgment of conviction" (quoting *Kotteakos*, 328 U.S. at 765)). Consequently, we reverse the conviction and remand the matter for a new trial should the Commonwealth be so advised.

CONCLUSION

We conclude that the trial court abused its discretion by admitting into evidence the inculpatory portions of Curry's statement to Detective Strickland but excluding the exculpatory parts. This error was not harmless. As a result, the Court reverses the conviction for using a communication system to solicit a child under the age of fifteen to engage in sexual acts in violation of Code § 18.2-374.3(C). The case is remanded for a new trial should the Commonwealth be so advised.

*Reversed and remanded.*

---

[8] In light of this holding, we do not separately address Curry's argument that the trial court violated his constitutional due process and confrontation rights by barring him from cross-examining Detective Strickland about the totality of his out-of-court statement. *See Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (noting that "[t]he doctrine of judicial restraint" requires that appellate courts decide cases on "the best and narrowest grounds available" (quoting *White*, 293 Va. at 419)); *Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) ("'[U]nnecessary adjudication of a constitutional issue' should be avoided." (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

Raphael, J., concurring.

I am pleased to join the Court's opinion in full. I write separately to further explore three significant misconceptions about Virginia Rule of Evidence 2:106 advanced by the Commonwealth in this case. The Commonwealth asserts:

- Rule 2:106(a) is the only embodiment of the rule of completeness in Virginia;

- by not addressing oral statements, Rule 2:106(a) overrules precedents like *Bowman v. Commonwealth*, 174 Va. 461 (1939); and

- because Rule 2:106(a) excludes completing evidence that is "inadmissible under the Rules of Evidence," the rule of completeness, as applied to oral statements, excludes hearsay.

Each of those claims is wrong.

*A. Virginia follows the rule of completeness established long ago under English common law.*

Dean Wigmore described the rule of completeness as the "general principle . . . that the *whole of a verbal utterance must be taken together* . . . ; for the law in this respect does no more than recognize the dictates of good sense and common experience." 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 2094, at 604 (J. Chadbourn rev. 1978) ["Wigmore"]. "We must compare the whole, not because we desire the remainder for its own sake, but because without it we cannot be sure that we have the true sense and effect of the first part." *Id.* at 601.

To evaluate the Commonwealth's claim that Rule 2:106(a) narrowed the common-law rule of completeness, one must first understand the scope of the doctrine under English common law. For the common law of England generally continues "in full force" in Virginia, establishing the "rule of decision, except as altered by the General Assembly." Code § 1-200.[9]

---

[9] Although our courts have not yet determined whether 1776 or 1792 marks the correct date for determining what was received from the common law of England, *see White v. United States*, 300 Va. 269, 277 n.5 (2021), "that date does not matter here," *Respess v. VMI Alumni Ass'n*, 81 Va. App. 141, 146 (2024).

Wigmore traced the origins of the rule of completeness to "the 1600s." Wigmore, *supra*, at 604 & n.9. Sir Edward Coke reported that a version of the rule was applied in *Read v. Hide* (1613) to records and other documents. *See* Edward Coke, *Third Part of the Institutes of the Laws of England: Concerning High Treason, and Other Pleas of the Crown and Criminall Causes* 173-74 (1644). The court in *Read* admonished that "no exemplification ought to be of any part of a . . . Record . . . but the whole Record . . . , so that the whole truth may appear, and not of such part, as makes for the one party, and nothing that make against him, or that manifesteth the truth." *Id.* *See also An Introduction to the Law Relative to Trials at Nisi Prius* 214 (1767) ("When a Man gives in Evidence a sworn Copy of a Record, he must give the Copy of the Whole Record in Evidence, for the precedent or subsequent Words or Sentence may vary the whole Sense and Import of the Thing produced, and give it quite another Face." (citing Coke, *supra*, at 173)).

The rule was applied to a defendant's admission in *King v. Paine*, 5 Mod. 163, 87 Eng. Rep. 584 (K.B. 1696), a criminal libel case. The defendant there admitted that he wrote the allegedly libelous text, but he claimed it was "dictated to him by another" and that "he did neither compose [n]or publish it, but only delivered it" by mistake to someone else. *Id.* at 163-64, 87 Eng. Rep. at 584. The court said that the exculpatory statements must be considered alongside the inculpatory one: "if such confession shall be taken as evidence to convict him, it is but justice and reason, and so allowed in the civil law, that his whole confession shall be evidence as well for as against him." *Id.* at 164, 87 Eng. Rep. at 584. *See also* Leonard MacNally, *Rules of Evidence on Pleas of the Crown* 35 (1811) ("Wherever a man's confession is made use of against him, it must all be taken together and not by parcels." (citing *Paine*)).

Several English cases decided after American independence are also noteworthy because our Supreme Court cited them (or treatises relying on them) in *Brown v. Commonwealth*, 36 Va.

- 18 -

(9 Leigh) 633, 634 (1838), and *Parrish v. Commonwealth*, 81 Va. (6 Hans.) 1, 14 (1884),

*overruled in part on other grounds by Fortune v. Commonwealth*, 133 Va. 669 (1922). In the

*Queen's Case*, 2 Br. & B. 284, 129 Eng. Rep. 976 (K.B. 1820), Lord Chief Justice Abbott

described a broad version of the completeness rule:

> [I]f counsel chooses to ask a witness as to any thing which may
> have been said by an adverse party, the counsel for that party has a
> right to lay before the Court the whole which was said by his client
> in the same conversation . . . , provided . . . that it relate to the
> subject matter of the suit; because it would not be just to take part
> of a conversation as evidence against a party, without given to the
> party, at the same time, the benefit of the entire residue of what he
> said on the same occasion.

*Id.* at 298, 129 Eng. Rep. at 981 (Abbott, C.J.). The Court of King's Bench went on to apply the

completeness rule in:

- *Rex v. Jones*, 2 Car. & P. 629, 630, 172 Eng. Rep. 285, 286 (K.B. 1827) ("There is no doubt that if a prosecutor uses the declaration of a prisoner, he must take the whole of it together, and cannot select one part and leave another . . . .");

- *Rex v. Higgins*, 3 Car. & P. 603, 604, 172 Eng. Rep. 565, 565 (K.B. 1829) ("[I]f the prosecutor makes the prisoner's declaration evidence, it then becomes evidence for the prisoner, as well as against him . . . ."); and

- *Rex v. Clewes*, 4 Car. & P. 221, 226, 172 Eng. Rep. 678, 681 (K.B. 1830) (Littledale, J.) ("The confession must be taken altogether, and it is evidence for the prisoner as well as against him; but still the Jury may, if they think proper, believe one part of it and disbelieve another.").

The Supreme Court of Virginia first embraced the completeness rule in its 1838 decision

in *Brown*:

> When the confession of a party, either in a civil or criminal case
> (for the rule is the same in both) is given in evidence, the whole, as
> well as that part which makes for him as that which is against him,
> must be taken together and go to the jury as evidence in the case.

36 Va. (9 Leigh) at 634. The Court cited the English decisions in *Jones*, *Higgins*, and *Clewes*, as

well as an evidence treatise by S. March Phillipps (discussed below). *Id.*

In its 1884 decision in *Parrish*, the Court said that the rule of completeness had been accepted "according to all the authorities." 81 Va. (6 Hans.) at 15. The Court cited its earlier decision in *Brown*, quoted from an evidence treatise by Henry Roscoe, and again cited Phillipps's evidence treatise. *Id.* Roscoe, citing the *Queen's Case*, said that "[i]n criminal, as well as in civil cases, the whole of an admission made by a party is to be given in evidence." Horace Smith, *Roscoe's Digest of the Law of Evidence in Criminal Cases* 52 (7th Am. Ed. 1874). Roscoe added that the rule was founded on the principle that "it would not be just to take part of a conversation as evidence against a party, without giving to the party at the same time the benefit of the entire residue of what he said on the same occasion." *Id.* Phillipps said that, for confessions as well as admissions by a prisoner, "it is necessary that the whole of what a prisoner has said, on the occasion of making a confession, should be related [in its] entire[ty]." 1 S. March Phillipps et al., *Treatise on the Law of Evidence: Tenth English Edition, with Considerable Alternations and Additions* 537 (4th Am. Ed. 1859). *See also id.* at 538 n.152 ("That the confessions of a criminal shall be taken together, in the ordinary sense of that phrase, is extremely well settled."); *id.* at 539 ("With respect to the effect of what the prisoner may have said favorable to himself in making a confession, the same rule prevails as in the case of admissions; the jury may believe one part of the prisoner's statement and disbelieve another.").

Our Supreme Court has since affirmed that the completeness rule set out in *Brown* and *Parrish* remains the law in Virginia. *See Boggs v. Commonwealth*, 229 Va. 501, 517 (1985); *Bowman*, 174 Va. at 463. So have we. *See Jones v. Commonwealth*, 50 Va. App. 437, 452-53 (2007); *Pierce v. Commonwealth*, 2 Va. App. 383, 390 (1986). As we said in *Pierce*, "*Brown*, *Parrish* and *Bowman* established a rule grounded in principles of fairness that authorized the admission of both inculpatory and exculpatory evidence." *Pierce*, 2 Va. App. at 390.

*B. Rule 2:106 only partially restates the rule of completeness and does not overrule Supreme Court precedent.*

Applying the rule of completeness, *Bowman* held that the trial court committed reversible error by admitting the inculpatory part of the defendant's oral statement—that he shot the decedent—while excluding the exculpatory part—that the defendant did so "to save himself." 174 Va. at 463-65. The trial court wrongly excluded the exculpatory statement as "self-serving." *Id.* at 463.

The Commonwealth told us at oral argument that Rule 2:106(a) overrules *Bowman*. The Commonwealth reasons that Rule 2:106 is the exclusive embodiment of the completeness rule in Virginia and that, because the rule addresses only a writing or recorded statement, not oral statements, it effectively supersedes *Bowman*.[10] So the Commonwealth concludes that the completeness rule "does not apply [here] because the Commonwealth did not introduce Curry's post-arrest statement in written or recorded form."

The Commonwealth is partially correct. As the Court correctly finds, *supra* at 6, Rule 2:106(a) does not apply here because it does not address oral statements. True, Detective Strickland tape-recorded her interview with Curry and prepared a written summary. But the Commonwealth did not seek to admit that evidence; it instead asked Detective Strickland on direct examination only to recount a portion of her oral conversation with Curry.

The Commonwealth is wrong on its other claims, however. To start, Virginia Rule of Evidence 2:102 expressly disclaims that any of the evidence rules modify or displace existing

---

[10] Rule 2:106(a) states:

> *Related Portions of a Writing in Civil and Criminal Cases.* — When part of a writing or recorded statement is introduced by a party, upon motion by another party the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it, unless such additional portions are inadmissible under the Rules of Evidence.

Virginia common law: "These Rules state the law of evidence in Virginia. They are adopted to implement established principles under the common law and not to change any established case law rendered prior to the adoption of the Rules." Va. R. Evid. 2:102. Thus, Rule 2:106(a) could not have overruled *Bowman* because the rules do "not . . . change any established case law." *Id.* Likewise, the fact that Rule 2:106(a) is limited to writings and recorded statements does not displace the common-law completeness rule as applied to oral statements. For "[a]s to matters not covered by these Rules, the existing law remains in effect. Where no rule is set out on a particular topic, adoption of the Rules has no effect on current law or practice on that topic." Va. R. Evid. 2:102.

The treatment of Federal Rule of Evidence 106 by the United States Supreme Court provides a useful analogy. Until 2023, *see infra* at 26, Federal Rule 106 applied the rule of completeness only to "a writing or recorded statement." Federal Rules of Evidence, Pub. L. No. 93-595, Rule 106, 88 Stat. 1926, 1930 (1975). In 1988, the Supreme Court held that Federal Rule 106 only "partially codified the doctrine of completeness," leaving the rest of the common-law rule in place. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). Assuming without deciding that Federal Rule 106 was inapplicable, the Court applied the common-law rule of completeness, holding that the district court's "refusal to admit the proffered completion evidence was a clear abuse of discretion." *Id.* Like the federal version of the rule then in effect in federal court, Rule 2:106(a) is not the exclusive embodiment of the common-law rule in Virginia courts.

> C. *The codicil in Rule 2:106(a)—"unless such additional portions are inadmissible under the Rules of Evidence"—does not show that hearsay statements must be excluded.*

The Commonwealth posits that, even assuming the completeness rule applies here, the rule excludes any completing portion of a statement that amounts to hearsay. The

Commonwealth cites the codicil in Rule 2:106(a) that completing information may be introduced "unless such additional portions are inadmissible under the Rules of Evidence." Think of that as the "unless-inadmissible codicil."

But the Commonwealth has failed to show that the unless-inadmissible codicil "state[s] the law of evidence in Virginia" or "implement[s] established principles under the common law." Va. R. Evid. 2:102. As shown above, the unless-inadmissible codicil cannot be squared with cases like *Bowman*, where the defendant's exculpatory hearsay that he shot the decedent in self-defense was admissible alongside his admission that he fired the fatal shot.

What is more, the history of the unless-inadmissible codicil in Rule 2:106(a) fails to show that it was based on Virginia common-law authority. The codicil was included in Rule 2:106(a) when the Supreme Court first promulgated the evidence rules in 2012. *See* Order (Va. July 1, 2012) (Rule 2:106(a)), https://perma.cc/8AGV-QWTR. It was also part of the original Rule 106 as published in 1997 by the Evidence Committee of the Boyd-Graves Conference. *See A Guide to Evidence in Virginia* 8 (Va. Bar Ass'n 1997). That guide, updated annually, served as the precursor of what became the Virginia Rules of Evidence.[11] Although the Evidence Committee added the unless-inadmissible codicil to the draft rule in 1997, the committee report did not explain why, nor did it cite any Virginia authority for doing so.[12]

---

[11] *See generally* Kent Sinclair, *The Law of Evidence in Virginia* § 1-2[a] (8th ed. 2018); Ronald J. Bacigal, *The Virginia Rules of Evidence*, 16 Rich. J. Law & Pub. Int. 1, 2 (2012); *A Guide to the Rules of Evidence in Virginia* iii-iv (2013).

[12] *Compare* Report on Rules/Code of Evidence at 4, Boyd-Graves Conference Booklet (1997) (at 184 of 284) (showing redline changes), https://perma.cc/64RM-XU8N, *with A Guide to Virginia Evidence* 8 (1997), *supra*. The Evidence Committee added the codicil after an earlier version without it was circulated for public comment. *See* "Virginia Rules of Evidence, Preliminary Discussion Draft," *Virginia Lawyers Weekly Supplement* 3 (June 24, 1996). Although that preliminary draft omitted the codicil, the draft "Note" observed nonetheless that "nothing in Rule 106 permits the contents of a writing or recording to be introduced it if would be barred by another rule of evidence—e.g., the hearsay rule." *Id.*

To be fair to the Evidence Committee, the federal caselaw was unclear in 1997 whether completing evidence that constituted hearsay was admissible under Federal Rule 106. In 1995, Professor Nance framed the question as whether Federal Rule 106 should be interpreted "to trump otherwise applicable exclusionary rules," something he called the "trumping function" of the rule.[13] Although fewer than half of the federal circuits had addressed the question by 1997, five circuits had rejected the trumping function while only one had recognized it.[14]

Wherever it came from, the unless-inadmissible codicil in the proposed Virginia rule remained in the text when the Supreme Court promulgated the evidence rules in 2012, 15 years later. By then, however, the federal-circuit split had tipped the other way. The "First, Second, Seventh, Tenth, Eleventh, and D.C. Circuits recognize[d] the trumping function of Rule 106," while "the Fourth, Sixth, Eighth, and Ninth Circuits d[id] not." Andrea N. Kochert, *The Admission of Hearsay Through Rule 106: And Now You Know the Rest of the Story*, 46 Ind. L. Rev. 499, 506-09 & nn. 61-84 (2013) (footnotes omitted) (collecting cases).[15]

---

[13] *See* Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 828, 840 (1995) ["Nance"]; *see also* 21A Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5072 at 387-88 & n.30 (2d ed. 2005) ["Wright & Graham"] (crediting Nance for coining the phrase "trumping function").

[14] *Compare U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1375-76 (2d Cir. 1988) ("The doctrine of completeness, Fed. R. Evid. 106, does not compel admission of otherwise inadmissible hearsay evidence."), *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (same), *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (same), *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (same), *and United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (same), *with United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.").

[15] The Second Circuit switched from rejecting the trumping function in its 1988 decision in *U.S. Football League*, 842 F.2d at 1375-76, to embracing it in *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007).

Given that disagreement, the unless-inadmissible codicil did not go unnoticed when the Virginia Supreme Court promulgated the evidence rules in 2012. Professor Bellin observed that including the "codicil place[d] Virginia firmly on one side of a longstanding federal circuit split." Jeffrey Bellin, *The Virginia and Federal Rules of Evidence: A Concise Comparison with Commentary* 11 (2015). He added that the codicil appeared to be "inconsistent" with our Supreme Court's decision in *Brown* and with this Court's decision in *Pierce*. *Id.* at 12.

The United States Supreme Court resolved the federal circuit split on the trumping function in 2023, when it amended Federal Rule of Evidence 106. *See* Proposed Amendments to the Federal Rules of Evidence, 344 F.R.D. 850, 851 (2023); Robert Mosteller et al., *McCormick on Evidence* § 56, at 521 (9th ed. 2025). That amendment expanded Rule 106 to cover *all* statements, not just written or recorded ones, and it clarified that the completing portions of a statement are admissible "over a hearsay objection." Fed. R. Evid. 106.[16] The Advisory Committee notes explained that the amended language is grounded in principles of fairness: "A party that presents a distortion can fairly be said to have forfeited its right to object on hearsay grounds to a statement that would be necessary to correct the misimpression." Notes of Advisory Committee on Rules—2023 Amendment.

    D. *The rule of completeness in Virginia, at least as applied to oral statements, trumps a hearsay objection to the exculpatory portions of the defendant's statement.*

Because this case does not involve the rule of completeness as applied to "a written or recorded statement," Va. R. Evid. 2:106(a), it provides no occasion to decide whether the unless-

---

[16] The revised Rule 106, entitled "Remainder of or Related Statements," reads:

> If a party introduces all or part of a statement, an adverse party
> may require the introduction, at that time, of any other part—or
> any other statement—that in fairness ought to be considered at the
> same time. The adverse party may do so over a hearsay objection.

Fed. R. Evid. 106.

inadmissible codicil in Rule 2:106(a) is invalid for conflicting with Virginia common law.  But for the oral statement involved here, the long line of precedent establishing the completeness rule in Virginia leaves no room for a codicil that would exclude completing evidence on the ground it is hearsay.[17]

When the prosecution offers only the incriminating part of a defendant's statement—as in *Bowman* and this case—"the princip[al] function of the common law completeness doctrine [is] allowing inadmissible evidence to be used for completeness."  *See, e.g.*, 21A Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5072.1, at 399 (2d ed. 2005). Disallowing such evidence because it is not otherwise admissible would make the rule "largely ineffectual in exactly those kinds of egregious abuse [cases] that spawned the . . . doctrine."  *Id.*[18] As Dean Wigmore cautioned more than a century ago, "the greatest possibilities of error lie in trusting . . . a fragment of an utterance without knowing what the remainder was."  3 John H. Wigmore, *Treatise on the System of Evidence in Trials at Common Law: Including the Statutes and Judicial Decisions of All Jurisdictions of the United States* § 2094, at 2823 (1904). I therefore wholeheartedly join the Court's conclusion that the oral statement at issue here was admissible under the completeness rule despite that it was hearsay.

---

[17] This case does not require deciding whether completing evidence could be excluded on grounds other than hearsay, such as exclusion for unfair prejudice under Virginia Rule of Evidence 2:403(a), or for privilege under Virginia Rules of Evidence 2:501 through 2:508.  *See generally* Wright & Graham, *supra*, § 5078, at 517; *id.*, § 5078.2, at 535-38; Nance, *supra*, at 883-85.

[18] *See also* Kochert, *supra*, at 509 ("[Federal] Rule 106 depends upon the ability to trump other evidentiary rules to fulfill its function of providing context."); Nance, *supra*, at 828 ("[T]he most important modern function of the completeness rule is to trump otherwise applicable exclusionary rules, though not every rule in every instance.").